**CITY OF WEBSTER, Texas, Appellant,**

v.

**David R. MYERS, Appellee.**

**No. 01–10–01015–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 27, 2011.

Rehearing Overruled Dec. 21, 2011.

William S. Helfand, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, TX, for Appellant.

David T. Lopez, David T. Lopez & Associates, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

LAURA CARTER HIGLEY, Justice.

The City of Webster ("the City") appeals the trial court's denial of the City's motion to dismiss David R. Myers' claims against city employees, Darrell Kelemen, Jr., Tiffany Swanson, Leslie Folk, Christina Garza, Sue Gallagher, Wayne Sabo, and Ray Smiley. In one issue, appellant contends that Myers' claims against the city employees must be dismissed pursuant to section 101.106(e) of the Texas Tort Claims Act.[1]

We reverse and render.

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(e) (Vernon 2011).

## Background

David R. Myers became a peace officer with the City of Webster police department in 1985. In 2004, Myers was promoted to the position of captain. After three female subordinates filed complaints alleging that Myers had sexually harassed them, the City terminated Myers' employment in 2008.

Myers filed suit against the City and eight individuals, including seven city employees. In his Original Petition, Myers denied the allegations of sexual harassment. He asserted that the allegations arose from a plan formulated by fellow police officer, Darrell J. Kelemen, Jr. Myers averred that Kelemen had a grudge against him and coveted his captain's position. Myers claimed that Kelemen recruited three female police department employees, Tiffany Swanson, Leslie Folk, and Christina Garza, to allege that Myers had sexually harassed them.

Myers asserted that the department's police chief, Ray Smiley, and the city manager, Wayne Sabo, also participated, "for personal reasons," in the conspiracy "to cause the separation of Myers from the department and ruin his peace officer's career." Two weeks after the police department first became aware of the allegations of sexual harassment, the City's human resources manager, Sue Gallagher, suspended Myers. Myers alleged that Gallagher did not follow proper procedure in handling the employment matter. He asserts that Gallagher also participated in the conspiracy to terminate his employment and to ruin his law enforcement career.

The City ultimately terminated Myers as a result of the sexual harassment complaints. Myers unsuccessfully contested his termination through the City's internal grievance process.

Myers also appeared at a hearing before the city council to tell his side of the story. Myers alleged in his Original Petition, "With full knowledge of the facts, the [city council] acquiesced and effectively ratified the action of the City Manager, thus delegating to the City Manager the ultimate authority to decide the action taken against Myers."

Myers further alleged in his Original Petition, "In further pursuit of the continuing conspiracy against Myers, the City of Webster, through its officials, unlawfully released information regarding sexual harassment allegations against Myers." He alleged that the information had been shared with James Michael Baird, who was not a city employee. Myers averred that "Baird was contacted and enlisted to join in the continuing conspiracy to interfere with Myers' employment as a peace officer and to ruin Myers' career as a peace officer." Myers alleged that Baird used the information to have Myers ejected from two professional organizations.

Myers named the City and city employees Darrell Kelemen, Jr., Tiffany Swanson, Leslie Folk, Christina Garza, Sue Gallagher, Wayne Sabo, and Ray Smiley (hereinafter, "the Employees") as defendants. Myers also sued non-city employee, James Michael Baird.

Toward the end of his Original Petition, Myers asserted,

> 4.46 The acts of the individual defendants, individually and in continuing conspiracy one with the others, have caused considerable loss and damage to Myers, including loss of employment, damage to his personal reputation, damage to his professional reputation, damage to his earning capacity, humiliation, emotional distress, and loss of the enjoyment of life, in an amount within the jurisdictional authority of this court.

4.47 The acts of the individual defendants, individually and in continuing conspiracy one with the other, were accomplished maliciously, wantonly, in bad faith and in reckless disregard of the rights and welfare of the plaintiff, Myers.

4.48 The City of Webster, acting through its officers and officials, terminated Myers' employment in violation of the provisions of the Texas Constitution securing to Myers his liberty and property without deprivation by due course of law, and consequently the termination of Myers' employment is void and of no effect.

4.49 The City of Webster adopted and ratified the wrongful actions of the individual defendants at a time that the officers and officials of the City knew or should have known that the treatment of Myers and the action taken against Myers violated the provisions of the Equal Rights Amendment to the Texas Constitution, entitling Myers to a declaration and provision of appropriate remedies by this Court.

In his prayer for relief, Myers requested, inter alia, (1) "restoration to his rightful place in the City of Webster Police Department," (2) "an award of damages from the individual defendants, jointly and severally," (3) "an award of damages from the City of Webster to the full extent allowed by law," and (4) an award of "punitive damages against each of the individual defendants . . . ."

The City filed a motion to dismiss Myers' claims against the Employees pursuant to Texas Tort Claims Act section 101.106(e).[2] The trial court denied the City's motion, and this interlocutory appeal followed. In one issue, the City contends that the trial court erred when it denied its motion to dismiss.

## Jurisdiction over Interlocutory Appeal

■ As a threshold matter, we address Myers's contention that this interlocutory appeal should be dismissed for lack of subject-matter jurisdiction.

■ Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only when a statute explicitly confers such jurisdiction. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex.2007). Section 51.014(a) of the Civil Practice and Remedies Code allows an appeal from an interlocutory order that

(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon 2008). The City asserts that this provision permits it to appeal the order denying its motion to dismiss. We agree.

As it relates to the issue of appellate jurisdiction, it is not significant that the City sought dismissal of Myers's claims against the Employees by filing a motion to dismiss rather than by filing a motion for summary judgment, as referenced in section 51.014(a)(5). The Supreme Court of Texas held recently held in *Austin State Hospital v. Graham* that "an appeal may be taken from orders denying an assertion of immunity, as provided in section 51.014(a)(5), regardless of the procedural vehicle used," including a motion to dismiss filed under Tort Claims Act section 101.106(e). *Austin State Hosp. v. Graham*, 347 S.W.3d 298, 301 (Tex.2011).

**2.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(e).

We recognize that, under its language, section 51.014(a)(5) applies only if the City's motion to dismiss was based on an assertion of immunity. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5). Courts have indicated that when a governmental unit seeks dismissal of the claims against an employee under subsection 101.106(e), such action is based on an assertion of immunity. *See Univ. of Texas Health Sci. Ctr. at Houston v. Crowder*, 349 S.W.3d 640, 643 (Tex.App.-Houston [14th Dist.] 2011, no pet.); *Singleton v. Casteel*, 267 S.W.3d 547, 549-50 (Tex.App.-Houston [14th Dist.] 2008, pet. denied); *see also Franka v. Velasquez*, 332 S.W.3d 367, 371 n. 9 (Tex.2011) (stating that section 101.106 confers immunity in some instances to employees of governmental units).

In his brief, Myers intimates that the City does not have standing to appeal the order denying the motion to dismiss. Myers suggests that the Employees should have appealed the order, not the City.

Tort Claims Act section 101.106(e) provides, "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the *filing of a motion by the governmental unit.*" *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(e) (Vernon 2011) (emphasis added). Thus, the governmental unit moves for dismissal of the claims against its employee; the employee does not move for dismissal under subsection (e). *See id.; see also Hernandez v. City of Lubbock*, 253 S.W.3d 750, 753-56 (Tex.App.-Amarillo 2007, no pet.) (holding that motion to dismiss employee filed under section 101.106(e) must be filed by governmental unit, not employee). In line with this provision, the City moved to dismiss Myers's claims against the Employees, and it is the only party seeking to appeal the order denying the motion.

Under section 51.014(a)(5), a party appeals the denial of a motion "that is based on an assertion of immunity by an individual ..." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a). The plain language of that section does not require that the underlying motion be filed by the individual asserting immunity. *See id.* The Supreme Court of Texas has held that if an entity has standing to seek dismissal in the trial court based on the assertion of immunity of its employees, then it also had standing to appeal under of section 51.014(a)(5). *City of Beverly Hills v. Guevara*, 904 S.W.2d 655, 656 (Tex.1995) (holding that city could appeal denial of its summary-judgment motion under section 51.014(a)(5), even though its employee did not file any summary-judgment motion, because the city sought dismissal based on the employee's official immunity); *see Crowder*, 349 S.W.3d at 643. Thus, because the City was authorized to file the section 101.106(e) motion to dismiss to assert the Employees' immunity claims, it was likewise authorized to appeal the denial order under of section 51.014(a)(5). *See Guevara*, 904 S.W.2d at 656; *Crowder*, 349 S.W.3d at 643.

For the reasons discussed, we hold that this Court has appellate jurisdiction to review the trial court's order denying the City's motion to dismiss. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5). We overrule Myers's contention disputing appellate jurisdiction.

### Motion to Dismiss Pursuant to Tort Claims Act Subsection 101.106(e)

The City presents one issue on appeal asserting that the trial court erred when it denied its motion to dismiss Myers's claims against the Employees. The City asserts that Myers's claims against the Employees are barred and must be dis-

missed under subsection 101.106(e) of the Tort Claims Act.

## A. Standard of Review

 Generally, we review a trial court's order on a motion to dismiss under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001); *Kanlic v. Meyer,* 230 S.W.3d 889, 892 (Tex.App.-El Paso 2007, pet. denied). However, the proper standard of review is not necessarily determined by the type of motion to which the order relates, rather it is determined by the substance of the issue to be reviewed. *Singleton,* 267 S.W.3d at 550 (citing *In re Doe,* 19 S.W.3d 249, 253 (Tex. 2000)).

 Here, the City's motion to dismiss raised an issue of immunity as conferred by section 101.106 of the Tort Claims Act. *See id.; see also Franka,* 332 S.W.3d at 371 n. 9 (stating that section 101.106 confers immunity in some instances to employees of governmental units). If immunity applies, the trial court lacks subject matter jurisdiction over the case. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004); *see also Univ. of Tex. Health Sci. Ctr. at San Antonio v. Webber–Eells,* 327 S.W.3d 233, 240 (Tex.App.-San Antonio 2010, no pet.) (stating that section 101.106 is a jurisdictional statute involving the waiver of immunity). Subject matter jurisdiction is a question of law which we review de novo. *Id.* at 226. Likewise, matters of statutory construction are reviewed under a de novo standard. *City of San Antonio v. Boerne,* 111 S.W.3d 22, 25 (Tex.2003); *see Entergy*

*Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 437 (Tex.2009).

## B. Tort Claims Act: Election of Remedies

The Texas Tort Claims Act establishes a limited waiver of immunity and caps damages for certain suits against governmental entities. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.023 (Vernon 2011). To avoid the act's damages cap and other strictures, plaintiffs began suing individual governmental employees. *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 656 (Tex.2008). The state legislature responded by creating an election-of-remedies provision. *Id.* As first enacted, section 101.106 barred any action against governmental employees after claims against the governmental unit were reduced to a judgment or settled.[3] However, it did not preclude a plaintiff from pursuing alternative theories against both the employee and the governmental employer before judgment was signed. *Id.*

In 2003, the legislature amended section 101.106. *Id.* Currently, the section, entitled "Election of Remedies," provides as follows:

(a) The filing of a suit under this Chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever

**3.** Former section 101.106 provided as follows: "A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the gov-

ernmental unit whose act or omission gave rise to the claim." Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 101.106).

bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

(c) The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.

(d) A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem.Code Ann. § 101.106.

The legislature's apparent purpose in revising section 101.106 was "to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." *Garcia,* 253 S.W.3d at 657. "By requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone, section 101.106 narrows the issues for trial and reduces delay and duplicative litigation costs." *Id.*

## C. Subsection 101.106(e) and the Parties' Contentions

To reiterate, subsection 101.106(e)—the provision under which the City moved to dismiss the Employees from this case—provides:

> If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

Tex. Civ. Prac. & Rem.Code Ann. § 101.106(e). In *Garcia,* the supreme court explained that "under this chapter" does not limit section 101.106(e)'s reach to tort claims for which the Tort Claim Act waives immunity. *Garcia,* 253 S.W.3d at 658 ("[W]e have never interpreted 'under this chapter' to only encompass tort claims for which the Tort Claims Act waives immunity."). The court reasoned that, because the Tort Claims Act was the only avenue for common-law recovery against a governmental unit, all tort claims against such entities were assumed to be "under this chapter" for purposes of section 101.106. *Id.* at 659. This includes intentional torts. *Id.* Accordingly, if a plaintiff brings any state common law tort claim against both a governmental unit and its employees, subsection 101.106(e) will allow the employee defendants to be dismissed on the motion of the governmental unit. *See id.*

The *Garcia* court also held that claims against the government brought pursuant to waivers of sovereign immunity that exist apart from the Tort Claims Act are not brought "under [the Tort Claims Act]." *Id.; see Kelemen v. Elliott,* 260 S.W.3d 518, 523 (Tex.App.-Houston [1st Dist.] 2008, no pet.). The court held that the plaintiffs' claim against the governmental unit for violating Texas Commission on Human Rights Act ("TCHRA") was not a suit filed "under" the Tort Claims Act. *Garcia,* 253 S.W.3d at 659. The *Garcia* court explained that the Tort Claims Act provides that the remedies it authorizes "are in addition to any other legal remedies." TEX. CIV. PRAC. & REM.CODE § 101.003 (Vernon 2011). The court stated that the TCHRA claim "would not come within subsection (e)'s purview because the Tort Claims Act expressly provides that the remedies it authorizes are in addition to any other legal remedies, and the TCHRA provides a statutory remedy for unlawful discrimination." *Garcia,* 253 S.W.3d at 659; *see Kelemen,* 260 S.W.3d at 523 (holding that plaintiffs claim under TCHRA and Whistleblower Act were not claims "under" the Tort Claims Act); *Swain v. Hutson,* No. 02–09–00038–CV, 2009 WL 3246750, at *6 (Tex.App.-Fort Worth 2009, pet. denied) (mem. op.) (holding that a federal section 1983 claim is not a claim brought under the Tort Claims Act).

Here, the City contends that subsection (e) bars Myers's claims against the Employees because, in his Original Petition, Myers sued both the City and the Employees for the common-law tort of conspiracy. Myers does not dispute that conspiracy qualifies as a claim "under" the act for section 101.106 purposes. Instead, he asserts that he has sued only the Employees in their individual capacities for conspiracy. Myers contends that he alleged only constitutional claims against the City seeking equitable relief, claims that do not fall under the Tort Claims Act. *See City of Elsa v. M.A.L.,* 226 S.W.3d 390, 392 (Tex. 2007) (holding that governmental entity could be sued for equitable and injunctive relief based on alleged constitutional violations); *Brand v. Savage,* 920 S.W.2d 672, 674 (Tex.App.-Houston [1st Dist.] 1995, no writ) ("[S]tate and federal constitutional claims are not barred by immunity.").

Thus, we are tasked with determining whether Myers asserted a common law tort claim against both the Employees and the City in his Original Petition.[4] If he has, then Myers's claims against the Employees are barred by subsection 101.106(e), and the Employees must be dismissed from the suit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(e) ("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.").

### D. Analysis

Myers contends that the acts he attributed to the individual employees to support his conspiracy claim against them

---

4. Myers has filed an amended petition; however, we must look to Myers's Original Petition, rather than his amended petition, in deciding whether a tort claim was brought against the City for purposes of the section 101.106(e) analysis. *See Brown v. Xie,* 260 S.W.3d 118, 122 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (concluding that plaintiff's original petition, not amended petition, is proper pleading to scrutinize in determining whether dismissal under section 101.106(e) is appropriate); *Villasan v. O'Rourke,* 166 S.W.3d 752, 762 (Tex.App.-Beaumont 2005, pet. denied) (holding that amending petition does not avoid mandatory language of section 101.106(e) when dismissal of government employee is appropriate based on original petition).

are separate and distinct from the acts he attributed to the City to support his constitutional claims against it. *See Kelemen,* 260 S.W.3d at 522 (holding, in a case in which plaintiff sued governmental unit only for statutory claims and sued employee only for common law tort claims, that subsection (e) did not require dismissal of employee because plaintiff's statutory claims against governmental unit were based on conduct distinct from that conduct on which tort claims against employee were based). Myers asserts that, in his Original Petition, the facts and allegations supporting his conspiracy claim against the Employees are found in separate paragraphs from his constitutional claims against the City. He contends that the language of the petition makes clear that his conspiracy claims against the Employees arise from the autonomous acts of the individual employees. Myers asserts that it is clear from the petition that his constitutional claims arise from the City's act of terminating him only after the completion of the acts constituting the conspiracy. He points out that his damages request from the Employees is separate from his damages request from the City.

A review of Myers's petition reveals that he set forth the acts of each individual employee that he contends supports his conspiracy claim against the Employees in their individual capacities. Nonetheless, Myers's Original Petition also explicitly identifies the City as a participant in the conspiracy and details the City's acts which furthered the conspiracy. Specifically, in Paragraph 4.43 of the Original Petition, Myers asserted: "In *further pursuit of the continuing conspiracy* against Myers, *the City of Webster,* through its officials, unlawfully released information regarding sexual harassment allegations against Myers." (Emphasis added.) This was an express allegation of an act of conspiracy against the City. It was not conduct related to the City's later act of termination; it was alleged to be part and parcel of the alleged conspiracy to damage Myers's law enforcement career aside from his termination of employment.

As he points out, Myers's emphasized in his Original Petition that he was suing the Employees in their individual capacity. More particularly, Paragraphs 4.46 and 4.47 provide as follows:

4.46 The acts of the individual defendants, individually and in continuing conspiracy one with the others, have caused considerable loss and damage to Myers, including loss of employment, damage to his personal reputation, damage to his professional reputation, damage to his earning capacity, humiliation, emotional distress, and loss of the enjoyment of life, in an amount within the jurisdictional authority of this court.

4.47 The acts of the individual defendants, individually and in continuing conspiracy one with the other, were accomplished maliciously, wantonly, in bad faith and in reckless disregard of the rights and welfare of the plaintiff, Myers.

Myers also points out that he pled a constitutional claim against the City based on the City's act of terminating his employment, which he alleges occurred post-conspiracy. In this regard, he pled,

4.48 The City of Webster, acting through its officers and officials, terminated Myers' employment in violation of the provisions of the Texas Constitution securing to Myers his liberty and property without deprivation by due course of law, and consequently the termination of Myers' employment is void and of no effect.

In addition to these allegations, Myers asserted in Paragraph 4.49:

4.49 The City of Webster adopted and ratified the wrongful actions of the individual defendants at a time that the officers and officials of the City knew or should have known that the treatment of Myers and the action taken against Myers violated the provisions of the Equal Rights Amendment to the Texas Constitution, entitling Myers to a declaration and provision of appropriate remedies by this Court.

In his brief, Myers asserts, "No act of conspiracy is asserted with respect to the claim of denial of equal protection in the Texas Constitution. Mere ratification of an action of employees, as alleged in Paragraph 4.49, after the conspiratorial acts have been accomplished, cannot constitute joining a conspiracy." However, as pointed out by the City, Myers does more than allege that the City has ratified and adopted the alleged tortious acts of the individual employees. Myers also requested damages against the City in addition to his request for equitable relief. In his prayer for relief, Myers sought "an award of damages from the City of Webster to the full extent allowed by law."

Texas courts have held that a claim seeking damages for alleged constitutional violations is brought under the Tort Claims Act for purposes of section 101.106. *See, e.g., Nkansah v. Univ. of Tex. at Arlington,* No. 02–10–00322–CV, 2011 WL 4916355, at *2 (Tex.App.-Fort Worth Oct. 13, 2011, no pet. h.) (mem. op.); *City of Arlington v. Randall,* 301 S.W.3d 896, 903 (Tex.App.-Fort Worth 2009, pet. denied); *Burdett v. Doe,* No. 03–06–00198–CV, 2008 WL 5264913, at *3 (Tex.App.-Austin Dec. 17, 2008, no pet.) (mem. op.). Although he framed his claims against the City as constitutional, Myers supported those claims with allegations that the City had adopted and ratified the tortious acts of the Employees. By seeking damages from the City, Myers was advancing his claims against the City based either on the tortious conduct of the Employees adopted and ratified by the City or on the City's own acts of conspiracy as alleged by Myers in the Original Petition. *See Burdett,* 2008 WL 5264913, at *3; *see also City of Beaumont v. Bouillion,* 896 S.W.2d 143, 149 (Tex.1995) (holding that money damages cannot be awarded for violations of the Texas Constitution but that injunctive relief is available). In short, the Original Petition demonstrates that Myers filed suit under the Tort Claims Act against both the City and the Employees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(e).

For the foregoing reasons, we conclude that Myers has filed suit under the Tort Claims Act against the Employees within the meaning of section 101.106(e). *See id.* We hold that the trial court reversibly erred when it denied the City's motion to dismiss the claims against the Employees.

We sustain the City's sole issue.

### Conclusion

We reverse the order of the trial court denying the City's motion to dismiss and render judgment dismissing the Employees from the pending suit in the trial court. *See id.* (providing that employees shall immediately be dismissed on the filing of a motion by the governmental unit).