**John M. DONOHUE, Appellant**

**v.**

**Perla DOMINGUEZ and Kevin
Nakata, in their individual
capacities, Appellees**

No. 04–15–00068–CV

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: January 13, 2016

John M. Donohue, Palestine, TX, for Appellant.

Mark Kosanovich, Fitzpatrick & Kosanovich, P.C., San Antonio, TX, for Appellee.

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice Patricia O. Alvarez, Justice

## OPINION

Karen Angelini, Justice

John M. Donohue appeals the dismissal of his claims against Officers Perla Dominguez and Kevin Nakata pursuant to section 101.106(f) of the Texas Tort Claims Act. Specifically, Donohue argues that the Texas Tort Claims Act does not apply to his claims. He also argues that the trial court erred in failing to allow him an adequate time to conduct discovery and in failing to compel the court reporter to transcribe the hearing on the officers' motions to dismiss. We affirm.

### BACKGROUND

Donohue originally filed suit against the San Antonio Police Department; the San Antonio Police Chief; Bexar County EMS; and Officers Dominguez and Nakata,[1] in both their individual and official capacities. According to Donohue's petition, in August 2014, he called the police's non-emergency number to request a police report be taken at his mother's home "concerning items involved in a divorce case." Donohue alleged that he then drove to his mother's home, calling his mother on the way. When his mother answered the phone, she was very upset and told him that police officers were already present at her home. She then passed the phone to Officer Dominguez who, according to Donohue's petition, started "asking simple questions in a strange manner" and demanded to know where Donohue was.

When Donohue arrived at his mother's home, the windows of his pickup truck were rolled down. According to Donohue's petition, Officer Dominguez went to the driver's side window of his pickup truck while Officer Nakata went to the passenger side window. Donohue alleged that Officer Nakata "attempt[ed] to reach into the truck through the passenger side window." Donohue rolled up the windows and told the officers to call him on his cell phone. The officers allegedly told Donohue that they wanted him out of the truck. According to Donohue's petition, the officers agreed to go inside his mother's home to talk. Donohue got out of his pickup truck and began walking towards the house when the officers allegedly "jumped him and threw him to the ground face down." Donohue alleged that the officers grabbed his "forearms and pulled them behind his back." Donohue alleged that he suffered personal injuries as a result and that "EMS personnel watched without intervening." Donohue was handcuffed and taken to Officer Dominguez's patrol car. Donohue alleged that he "was shoved into the backseat where his legs became wedged between the backseat and the door opening … Officer [Nakata] began kicking Donohue's legs and knees trying to force them inside the door." The officers took Donohue to the emergency room, and Donohue was treated that night.

With respect to Officers Dominguez and Nakata, Donohue brought claims for false imprisonment, assault, and aggravated assault, which he alleged were brought pursuant to chapters 20, 22, and 39 of the Texas Penal Code. Donohue also alleged

---

1. He first filed suit against "Officer John Doe" and later amended his petition to reflect that Officer John Doe was in fact Officer Nakata.

violations under article, 1, sections 9, 13, and 19 of the Texas Constitution.[2]

Officers Dominguez and Nakata then moved to dismiss pursuant to the Texas Tort Claims Act. The trial court granted the motions and dismissed all of Donohue's claims against Officers Dominguez and Nakata with prejudice. Donohue then nonsuited his claims against the officers in their official capacities. He also filed a notice of interlocutory appeal.

### APPLICABILITY OF SECTION 101.106 OF THE TEXAS TORT CLAIMS ACT

■ For various reasons, Donohue argues that the Texas Tort Claims Act does not apply to his claims against Officers Dominguez and Nakata. We review the legal question of whether the Texas Tort Claims Act applies to his claims de novo. *See Singleton v. Casteel*, 267 S.W.3d 547, 550 (Tex.App.—Houston [14th Dist.] 2008, pet. denied).

■ Officers Dominguez and Nakata were sued in both their individual and official capacities. A suit against an individual in his official capacity is a suit against the governmental entity. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex.2007). Relying on section 101.106(f) of the Texas Tort Claims Act, both Officer Dominguez and Officer Nakata filed motions to dismiss.

■ Governmental immunity generally protects municipalities and other state subdivisions from suit unless immunity has been waived by the Texas Constitution or state law. *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex.2014). The Texas Tort Claims Act, as codified in chapter 101 of the Texas Civil Practice and Remedies Code, provides a limited waiver of immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–101.109 (West 2011 & Supp. 2015). To avoid the Texas Tort Claims Act's "damages cap and other strictures, plaintiffs began suing individual governmental employees." *City of Webster v. Myers*, 360 S.W.3d 51, 56 (Tex.App.— Houston [1st Dist.] 2011, pet. denied) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex.2008)). "The state legislature responded by creating an election-of-remedies provision." *Id.* "As first enacted, section 101.106 barred any action against governmental employees after claims against the governmental unit were reduced to a judgment or settled." *Id.* "However, it did not preclude a plaintiff from pursuing alternative theories against both the employee and the governmental employer before judgment was signed." *Id.*

Thus, in 2003, the legislature amended section 101.106 to provide a new election-of-remedies procedure. This current version of section 101.106 "serves the additional purpose of easing the burden placed on governmental units and their employees in defending duplicative claims, in part by 'favor[ing] the expedient dismissal of ... employees when suit should have been brought against the government' under the Act." *Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 415 (Tex.2015) (quoting *Tex. Adjutant Gen. Office v. Ngakoue*, 408 S.W.3d 350, 355 (Tex. 2013)) (alteration in original). Subsection 101.106(f) provides that a lawsuit filed against an employee of a governmental unit is against the employee in his official capacity only if the allegations against the employee are "based on conduct within the

---

**2.** Donohue also alleged violations under the United States Constitution. The case was then removed to federal court. After the federal court remanded the case back to state court, Donohue nonsuited his claims under the federal constitution, which he noted was in conformity with the federal court's order.

general scope of that employee's employment" and if the suit "could have been brought under this chapter against the governmental unit." Tex. Civ. Prac. & Rem. code Ann. § 101.106(f) (West 2011). The employee can then file a motion seeking dismissal of the lawsuit against him and "the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." *Id.* "The legislature's apparent purpose in revising section 101.106 was 'to force a plaintiff *to decide at the outset* whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery.'" *City of Webster v. Myers,* 360 S.W.3d 51, 57 (Tex.App.—Houston [1st Dist.] 2011, pet. denied) (quoting *Mission Consol. Ind. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 657 (Tex.2008)) (emphasis added). "By requiring a plaintiff to make an irrevocable selection *at the time suit is filed* between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone, section 101.106 narrows the issues for trial and reduces delay and duplicative litigation costs." *Garcia,* 253 S.W.3d at 657 (emphasis added). Here, not only did Donohue sue the officers *and* the San Antonio Police Department, he also explicitly stated that he was suing the officers in both their official and individual capacities. Donohue did not make the selection at the time of suit between suing the governmental unit or proceeding against the employees alone in their individual capacities. *See id.* Thus, the officers moved to dismiss pursuant to section 101.106(f).

On appeal, Donohue argues that his claims should not have been dismissed pursuant to section 101.106(f) because his claims were not brought under the Texas Tort Claims Act. According to Donohue, he has alleged "criminal acts as described in the Penal Code" and violations of his "rights under the Texas Constitution." He argues these are not claims brought under the Texas Tort Claims Act.

First, Donohue argues that criminal acts are not "torts" and thus cannot fall under the Texas Tort Claims Act. What Donohue fails to realize is that the Texas Penal Code does not provide for a party filing a civil action. Instead, for example, a party must allege a civil assault claim, which requires proof of the same elements as those required for criminal assault. *See Johnson v. Davis,* 178 S.W.3d 230, 240 (Tex.App.—Houston [14th Dist.] 2005, pet. denied) ("To establish a prima facie claim for civil assault, the plaintiff must establish the same elements required for criminal assault."). However, a civil assault claim is still a "tort"; it is called "an intentional tort." *City of Watauga v. Gordon,* 434 S.W.3d 586, 588–94 (Tex.2014) (explaining that because the Texas Tort Claims Act does not waive governmental immunity for intentional torts and because claims for civil assault and battery are intentional torts, governmental immunity is not waived and such claims must be dismissed). Thus, contrary to Donohue's argument, any civil claims he has brought for false imprisonment, assault, and aggravated assault are "torts." *See id.*

Further, any civil claims brought for false imprisonment, assault, and aggravated assault are claims subject to the Texas Tort Claims Act. *See Franka v. Velasquez,* 332 S.W.3d 367, 375 (Tex.2011); *Lopez v. Serna,* 414 S.W.3d 890, 895 (Tex. App.—San Antonio 2012, no pet.). In *Mis-*

*sion Consolidated Independent School District v. Garcia,* 253 S.W.3d at 657, the Texas Supreme Court interpreted the phrase "under this chapter" with regard to section 101.106. *See* Tex. Civ. Prac. & Rem.code Ann. § 101.106(e) (West 2011) ("If a suit is filed *under this chapter* against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.") (emphasis added); *id.* § 101.106(f) ("If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought *under this chapter* against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only . . . .") (emphasis added). The Texas Supreme Court criticized the court of appeals for reasoning that none of the plaintiff's claims had been brought "under this chapter" because those claims did not fit within the Texas Tort Claims Act's waiver of governmental immunity. *See Garcia,* 253 S.W.3d at 658. The supreme court emphasized that it had "never interpreted 'under this chapter' to only encompass tort claims for which the Tort Claims Act waives immunity." *Id.* The court explained that "[t]o the contrary, [it had held] that former section 101.106's limiting phrase 'under this chapter' operated to bar an intentional tort claim against an employee after a final judgment on a claim involving the same subject matter had been rendered against the governmental unit, even though the Act by its terms expressly excluded intentional torts from the scope of the Act's immunity waiver." *Id.* Although the supreme court recognized that its previous cases had construed the prior version of section 101.106, it stressed that "there is nothing in the amended version that would indicate a narrower application of the phrase 'under this chapter'

was intended." *Id.* at 659. "Because the Tort Claims Act is the only, albeit limited, avenue for commonlaw recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be under the Tort Claims Act for purposes of section 101.106." *Id.* (quotation omitted). Thus, even though the Texas Tort Claims Act does not waive immunity for the intentional tort claims brought by Donohue (i.e., false imprisonment, assault, and aggravated assault), those claims are still subject to section 101.106(f). *See id.; see also Franka,* 332 S.W.3d at 380 (holding that "subsection (f) [of section 101.106] must be governed by the same rule *Mission* applied in construing subsection (e)").

■ The supreme court in *Garcia* also explained that if the plaintiff brings claims pursuant to waivers of sovereign immunity that exist apart from the Texas Tort Claims Act, those claims would not be brought "under this chapter." *See Garcia,* 253 S.W.3d at 658. Thus, the supreme court held that the plaintiff's claim against the governmental unit for violating the Texas Commission on Human Rights Act ("TCHRA") was not a suit filed "under this chapter" and not subject to dismissal pursuant to section 101.106. *Id.* The court explained that the TCHRA claim would not come within section 101.106 "because the Tort Claims Act expressly provides that the remedies it authorizes are in addition to any other legal remedies, and the TCHRA provides a statutory remedy for unlawful discrimination." *Id.* Similarly, a claim under the Texas Whistleblower Act would not be a claim "under this chapter." *See Kelemen v. Elliott,* 260 S.W.3d 518, 523 (Tex.App.—Houston [1st Dist.] 2008, no pet.). Thus, "claims asserted pursuant to independent statutory waivers of immunity are not brought 'under' the Act." *Can-*

*non,* 453 S.W.3d at 415. Here, however, Donohue has not brought his claims pursuant to an independent statutory waiver of immunity like the TCHRA or the Texas Whistleblower Act.[3] Thus, his claims do not exist apart from section 101.106 of the Texas Tort Claims Act.

 Similarly, his claims pursuant to the Texas Constitution do not exist apart from section 101.106 of the Texas Tort Claims Act. As noted, independent statutory waivers of immunity are not brought 'under' the Act for purposes of section 101.106. Pursuant to 42 U.S.C. § 1983, plaintiffs may bring private civil actions for violations of their federal constitutional rights. *See* 42 U.S.C. § 1983. Thus, § 1983 claims exist apart from section 101.106 of the Texas Tort Claims Act. *Cannon,* 453 S.W.3d at 415. However, Texas has no provision comparable to § 1983. *See City of Beaumont v. Bouillion,* 896 S.W.2d 143, 147 (Tex.1995). Generally, there is no private cause of action against a governmental entity or its officials for money damages relating to alleged violations of Texas constitutional rights. *City of Arlington v. Randall,* 301 S.W.3d 896, 906–07 (Tex.App.—Fort Worth 2009, pet. denied); *Tex. A & M Univ. Sys. v. Luxemburg,* 93 S.W.3d 410, 425 (Tex.App.—Houston [14th Dist.] 2002, pet. denied) (op. on reh'g); *Univ. of Tex. Sys. v. Courtney,* 946 S.W.2d 464, 468–69, 471 (Tex.App.—Fort Worth 1997, writ denied). "[O]nly if the language of the specific provisions involved clearly impl[y]" a private action for damages does the Texas Constitution create one.[4] *Brown v. De La Cruz,* 156 S.W.3d 560, 563 (Tex.2004). Here, Donohue alleges violations of article 1, sections 9 (search

and seizure), 13 (cruel and unusual punishment), and 19 (life, liberty, due course of law). None of these provisions imply a private right of action for damages against the governmental unit that would exist apart from the Texas Tort Claims Act. *See Courtney,* 946 S.W.2d at 471; *see also City of Webster v. Myers,* 360 S.W.3d 51, 60 (Tex.App.—Houston [1st Dist.] 2011, pet. denied) ("Texas courts have held that a claim seeking damages for alleged constitutional violations is brought under the Texas Tort Claims Act for purposes of section 101.106").

 Donohue also argues that section 101.106(f) does not apply because the officers were acting outside the scope of their employment. Section 101.106(f) applies "[i]f a suit is filed against an employee of a governmental unit *based on conduct within the general scope of that employee's employment.*" TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (West 2011) (emphasis added). The Texas Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *Id.* § 101.001(5) (West Supp. 2015). "An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee *to serve any purpose* of the employer." *Alexander v. Walker,* 435 S.W.3d 789 (Tex.2014) (quoting Restatement (Third) of Agency § 7.07(2) (2006)) (emphasis added). In *Alexander,* the plaintiff brought suit in state court "alleging assault, conspiracy,

---

**3.** While Donohue did allege federal constitutional claims that can be brought pursuant to 42 U.S.C. § 1983, he has since nonsuited those claims.

**4.** The supreme court has explained that "the takings section" of the Texas Constitution "implied a private action for damages by prohibiting takings 'without adequate compensation.'" *De La Cruz,* 156 S.W.3d at 563.

slander, false arrest, false imprisonment, and malicious prosecution against two Harris County Sheriff s Department employees." *Id.* at 790. "The allegations in Walker's petition that relate to the officers stem from their allegedly improper conduct in the course of arresting Walker on two separate occasions." *Id.* at 792. The supreme court explained that "Walker did not allege any independent course of conduct by the officers not intended *to serve any purpose* of Harris County." *Id.* (emphasis added). Similarly, in this case, Donohue's allegations in his petition relate to the officers' allegedly improper conduct in the course of arresting Donohue. Donohue did not allege an independent course of conduct by the officers intended *to further their own purposes only* and thereby not intended to serve *any* purpose of the San Antonio Police Department. *See Laverie v. Wetherbe*, No. 07–13–00348–CV, 2015 WL 739670, at *4 (Tex.App.—Amarillo Feb. 20, 2015, pet. filed) (holding that claims were within the general scope of employment as provided by section 101.106 because the record did not show the government employee was, by her actions, serving her own purposes only and not any purpose of her employer).

Thus, for the reasons stated above, we conclude that contrary to Donohue's arguments, section 101.106(f) does apply to his claims. In applying section 101.106(f), the clerk's record reflects that Donohue originally sued the San Antonio Police Department, a governmental unit, and Officers Dominguez and Nakata, in both their individual and official capacities. The Texas Supreme Court has explained that "[b]ecause the decision regarding whom to sue has irrevocable consequences [under the Texas Tort Claims Act], a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually." *Molina v. Alvarado*, 463 S.W.3d 867, 871 (Tex.2015). According to the court, if a plaintiff is not in the position of knowing whether the employee was acting within the scope of employment at the time suit is filed, "the prudent choice would have been to sue [the employee], and await a factual resolution of that question." *Id.* Donohue failed to make such a choice and instead sued the governmental unit, and the officers in both their individual and official capacities. And, after the motions to dismiss pursuant to section 101.106(f) were filed by the officers, Donohue did not file, within thirty days, amended pleadings dismissing the officers and naming the governmental unit as the defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. 101.106(f) (West 2011).

## TIME FOR DISCOVERY

Donohue further argues that the trial court erred in dismissing his claims "without meaningful discovery." Donohue, however, has not preserved his complaint for appellate review because the appellate record does not reflect that his complaint was presented to the trial court and that the trial court ruled on the motion or refused to rule on the motion. *See* TEX. R. APP. P. 33(a)(1); *U. Lawrence Boze' & Assoc. P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 33 (Tex.App.– Houston [1st Dist.] 2011, no pet.). Donohue also argues that the trial court erred by not having a court reporter present at the hearing to make a record of the hearing. Donohue, however, has also failed to preserve this complaint for appellate review, as the clerk's record does not reflect that he objected to the court reporter's failure to make a record of the hearing. *See Sareen v. Sareen*, 350 S.W.3d 314, 316 (Tex.App.—San Antonio 2011, no pet.) (holding that "the complaining party must have objected to the reporter's failure to

transcribe the missing testimony in order to preserve the complaint for appellate review").

### CONCLUSION

Having determined that all of Donohue's arguments on appeal lack merit, we affirm the order of the trial court dismissing Donohue's claims against Officers Dominguez and Nakata.