**Opinion issued August 26, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00998-CV

———————————

**SUNERGON OIL, GAS AND MINING GROUP, INC., Appellant**

**V.**

**ARNULFO MONTES CUEN, Appellee**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 19-DCV-259663**

---

### MEMORANDUM OPINION

Appellant Sunergon Oil, Gas and Mining Group, Inc. ("Sunergon") appeals from the trial court's order dismissing its sole claim for fraud against appellee Arnulfo Montes Cuen in favor of binding arbitration. In three issues, Sunergon

argues that the trial court erroneously dismissed its claim against Cuen because the arbitration agreement on which Cuen relied is invalid and unenforceable and because the claim is outside the scope of the arbitration agreement. Sunergon also challenges the admissibility of the contract containing the arbitration clause. Because Cuen did not prove the existence of a valid arbitration agreement that applies to him as a non-signatory to the agreement under principles of agency, we reverse and remand the case to the trial court for proceedings consistent with this opinion.

## Background

According to Sunergon's allegations, Sunergon and Cuen met several times in Katy to discuss a business opportunity relating to water treatment units and equipment. Cuen represented that he could deliver the units and equipment. In exchange, Sunergon "loaned" him $3 million to purchase the equipment.[1] When Cuen did not deliver the equipment, Sunergon sued him individually for fraud in the underlying lawsuit. Sunergon claimed that Cuen made materially false representations that induced it to give him the money.

Cuen filed a motion to dismiss Sunergon's claim with prejudice. Cuen argued, among other things, that Sunergon was required to arbitrate its fraud claim against

---

[1] Neither the record on appeal nor the parties' briefs states when the parties' negotiations in Katy took place. The record indicates that Sunergon sent the $3 million by wire transfer in September and October 2018, and a contract concerning the referenced water treatment business was signed in October 2018.

him based on a binding arbitration agreement between the parties. Cuen attached a single exhibit to his motion, which was a contract written in Spanish and later supplemented with a certified written translation. The contract was signed in October 2018, and it included an arbitration clause, stating:

> Any dispute that arises from the interpretation or non-compliance of this contract, including any matter related to its existence, validity or extinction, "THE PARTIES" agree to submit and eventually resolve through arbitration, according to the Inter-American Commercial Arbitration Commission (SICE) Proceeding Rules, which is considered as included by reference in this clause. There should be THREE arbitrators, assigned in agreement with SICE rules.[2]

The agreement lists Sunergon and IWET Concept de Mexico SA de CV ("IWET"),[3] a Mexican company, as parties to the agreement, the purpose of which was to create a joint venture to conduct business related to water treatment. The contract expressly references $3 million that Sunergon paid to IWET prior to signing the contract as "an initial investment" for "delivery of a technology package" related

---

[2] This arbitration clause appears in a section entitled, "Arbitration of Disputes." That section contains other provisions, including a provision stating, "Any litigation, controversy or claim resulting, related or derivative of this contract, it's [sic] compliance, non-compliance, execution, resolution, or invalidity, will be resolved by lawsuit before the First Circuit Federal Courts in Mexico City, and by applicable federal laws." We do not opine whether this provision would have any effect on an otherwise valid arbitration agreement.

[3] IWET is not a party to this appeal, and the record does not indicate that it was a party in the trial court.

3

to water treatment equipment. This is the amount of damages Sunergon seeks from Cuen in the underlying lawsuit.

Cuen is also listed at the top of the contract, alongside Sunergon and IWET, as "sole proprietor of the patents" underlying the water treatment venture. The contract states that Cuen will license his patents to the Sunergon-IWET joint venture, but the patents remained Cuen's "sole property." The parties agree on appeal, however, that even if the contract ostensibly lists Cuen as a party to it, he signed the contract only as IWET's "legal representative" and not personally, the latter of which is the capacity in which Sunergon sued him.

Sunergon filed a response to Cuen's motion to dismiss.[4] Among other things, Sunergon argued that Cuen "held himself out as the owner and president of IWET"

---

[4]    In part of its response, Sunergon objected to the admissibility of the contract and the initial translation of it because the translation did not include a translator's affidavit and was not accurate, namely because it omitted Cuen's name at the top of the contract. *See* TEX. R. EVID. 1009(a) (providing that translation of foreign language document is admissible if proponent serves on all parties "the translation and the underlying foreign document" and "a qualified translator's affidavit"). Although Cuen supplemented his motion to dismiss with a second translation, Sunergon continued objecting to the initial translation because Cuen's motion relied on it and not the second translation. Sunergon did not otherwise object to the second translation. At the hearing on Cuen's motion to dismiss, Sunergon objected to the second translation on the grounds that it was not served with the underlying Spanish contract, as Sunergon contended was required under Rule 1009(a), and that it was not served at least forty-five days before the hearing. *See id.* Sunergon did not challenge the accuracy of the second translation. Sunergon continues objecting to the admissibility of the contract and the second translation on appeal, although it does not object to the accuracy of the second translation. We address and overrule Sunergon's objections below.

while dealing with Sunergon, but he "did not have the power to bind IWET to any agreement" at the time he signed the contract as IWET's legal representative.[5] Sunergon's response attached a newspaper article from 2019, to which Cuen did not object, reporting that Cuen stated, "[F]or five years now, I don't belong to the Iwet [sic] Company."[6] Sunergon argued that an agency relationship is not presumed and that Cuen, as the party asserting agency, had the burden to prove his authority to act on IWET's behalf but he did not meet his burden.

At a hearing on Cuen's motion to dismiss, Sunergon argued that its evidence showed Cuen had not "been part of" IWET during the time period in which he claimed to represent IWET and that Cuen had admitted he was not a party to the contract with the arbitration clause. Following the parties' arguments, the court granted Cuen's motion and dismissed Sunergon's claim. The court's written order granted Cuen's motion "based on [the] binding arbitration clause/procedure outlined in the parties' agreement (signed by all parties)." This appeal followed.

---

[5]     Sunergon also argued that arbitration of its claim against Cuen was not required under the arbitration clause because arbitration was not the sole method to resolve the parties' dispute, rendering the clause invalid as well as showing the parties did not have a meeting of the minds regarding arbitration.

[6]     Sunergon also relied on translations of Spanish videos from Facebook, in which Cuen allegedly made similar comments disavowing any association with IWET for several years. The translation of these videos does not indicate when the statements were made or when the videos were published, and the videos are not necessary to our decision. We therefore decline to consider them.

## Validity of Arbitration Agreement

In its first issue, Sunergon argues that the trial court erred in finding that Cuen proved the existence of a valid, enforceable arbitration agreement.

### A.    Standard of Review

We review an order compelling arbitration for abuse of discretion.[7] *Wagner v. Apache Corp.*, — S.W.3d —, Nos. 19-0243 & 19-0244, 2021 WL 1323413, at *3 (Tex. Apr. 9, 2021). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 714 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Id.* (quoting *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018)). The validity and scope of an arbitration agreement are questions of law that we review de novo. *Wagner*, 2021 WL 1323413, at *3; *SK Plymouth*, 605 S.W.3d at 714–15.

---

[7]    Cuen filed a motion to dismiss Sunergon's claim based on a binding arbitration agreement, which the trial court granted, but the substance of Cuen's motion was to compel arbitration. *See City of Webster v. Myers*, 360 S.W.3d 51, 56 (Tex. App.— Houston [1st Dist.] 2011, pet. denied) ("[T]he proper standard of review is not necessarily determined by the type of motion to which the order relates, rather it is determined by the substance of the issue to be reviewed."). Thus, we review the issue using the same standard as that used to review orders on a motion to compel arbitration. *See id.*

**B.   Governing Law**

Under the Federal Arbitration Act ("FAA"), which applies here,[8] a party seeking to compel arbitration must establish that (1) a valid and enforceable arbitration agreement exists, and (2) the claims in dispute fall within the scope of that agreement. *Wagner*, 2021 WL 1323413, at *3. These two factors are gateway questions to be decided by the court unless the parties agree to submit the arbitrability question to an arbitrator.[9] *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018); *W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C.*, 237 S.W.3d 745, 753–54 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002)). "Generally under the FAA, state law governs whether a litigant agreed to arbitrate, and federal

---

[8]   Both the FAA and the Texas Arbitration Act ("TAA") can apply to an arbitration agreement. The FAA applies to arbitration agreements involving interstate commerce, and it preempts all otherwise applicable state law, including the TAA, when state law "refuse[s] to enforce an arbitration agreement that the FAA would enforce . . . ." *In re Devon Energy Corp.*, 332 S.W.3d 543, 547 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) (quoting *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (orig. proceeding)). If an arbitration agreement does not specify whether the FAA or the TAA applies but states that it is governed by Texas law, both the FAA and the TAA apply unless the agreement specifically excludes federal law. *Id.* Sunergon does not argue whether the FAA or the TAA governs the arbitration agreement. *See* TEX. R. APP. P. 38.1(i). Cuen argues that the FAA applies because the contract does not reference Texas law, the parties are citizens of different countries, and the substance of the agreement concerns interstate commerce. We agree with Cuen and conclude that the FAA applies to the arbitration agreement at dispute here. *See In re Devon Energy*, 332 S.W.3d at 547.

[9]   Neither party argues that the contract evidences an intent to submit the issues of the validity and scope of the arbitration clause to an arbitrator.

7

law governs the scope of an arbitration clause." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). The party seeking to compel arbitration—here, Cuen—has the burden to prove both that a valid arbitration agreement exists and that the disputed claims are within the scope of that agreement. *Henry*, 551 S.W.3d at 115.

Courts apply traditional contract principles to the construction of arbitration agreements. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *see Wagner*, 2021 WL 1323413, at *3 ("Arbitration agreements are on equal footing with other contracts and must be enforced according to their terms."). "In construing a contract, including an arbitration provision, our primary concern is to determine the intent of the parties as expressed by the plain language of the contract." *Wagner*, 2021 WL 1323413, at *5; *see Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018) ("Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms.").

"Generally, only signatories to an arbitration agreement are bound by the agreement." *Elgohary v. Herrera*, 405 S.W.3d 785, 789–90 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (quoting *In re James E. Bashaw & Co.*, 305 S.W.3d 44, 54 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding)). But non-signatories can also be bound to an arbitration agreement in certain circumstances. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009) (orig. proceeding). Whether a

8

nonparty may enforce an arbitration clause can involve aspects of either the validity or the scope of the arbitration agreement or both. *See In re Weekley Homes*, 180 S.W.3d at 130–31. In determining whether a nonparty may enforce arbitration, courts apply state law "while endeavoring to keep it as consistent as possible with federal law." *See id.* at 131.

A non-signatory to an arbitration agreement may enforce the agreement under various rules of law and equity, including the law of agency.[10] *See In re Labatt Food Serv.*, 279 S.W.3d at 644. As the Texas Supreme Court has stated,

> First, "parties to an arbitration agreement may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacity." Corporations can act only through human agents, and many business-related torts can be brought against either a corporation or its employees. If a plaintiff's choice between suing the corporation or suing the employees determines whether an arbitration agreement is binding, then such agreements have been rendered illusory on one side. As we recently noted, this would not place arbitration agreements on equal footing with other contracts . . . .

*In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 188–89 (Tex. 2007) (orig. proceeding) (internal citations omitted).

---

[10]  Texas and federal law recognize six theories under which a court could compel a non-signatory to arbitrate, which include incorporation by reference, assumption, agency, veil-piercing or alter ego, estoppel, and third-party beneficiary. *Wagner v. Apache Corp.*, — S.W.3d —, Nos. 19-0243 & 19-0244, 2021 WL 1323413, at *5 (Tex. Apr. 9, 2021). Here, the parties argue only a theory of agency. Thus, we do not consider whether Cuen could be compelled to arbitrate under the other five theories.

Agency is not presumed, however. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017). A party alleging the existence of an agency relationship bears the burden of proving it. *Id.* at 589.

"An 'agent' is one who is authorized by a person or entity to transact business or manage some affair for the person or entity." *Metro. Ins. & Annuity Co. v. Peachtree Settlement Funding, LLC*, 500 S.W.3d 5, 17–18 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *Paragon Indus. Applications, Inc. v. Stan Excavating, LLC*, 432 S.W.3d 542, 548 (Tex. App.—Texarkana 2014, no pet.)). The two essential elements of agency are the agent's authority to act on behalf of the principal and the principal's control over the agent. *Id.* at 18; *see Jody James Farms*, 547 S.W.3d at 635 ("To establish an agency relationship, a non-signatory must show it was subject to the principal signatory's control and authorized to act as its agent.").

Authority to act may be actual or apparent. *See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) ("An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)."); *Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 30 (Tex. App.—San Antonio 1998, pet dism'd w.o.j.) ("[A]bsent actual or apparent authority, an agent cannot bind a principal."). Actual authority "is delegated to an agent by words of the principal that expressly

and directly authorize the agent" to act on behalf of the principal. *Peachtree Settlement Funding*, 500 S.W.3d at 18.

Apparent authority, on the other hand, is based on estoppel and arises either from a principal knowingly permitting an agent to hold himself out as having authority or "by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *Gaines*, 235 S.W.3d at 182 (quoting *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949 (Tex. 1998)). Establishing a claim of apparent authority requires "the principal's full knowledge of all material facts." *Id.* In determining whether an agent has apparent authority, "only the conduct of the principal is relevant." *Id.* "Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority." *Id.* at 183.

## C.    Analysis

The parties agree that Cuen was not a signatory to the contract because he signed it as IWET's "legal representative" and did not indicate that he was signing it personally. The face of the contract confirms that Cuen did not sign in an individual capacity. We therefore conclude that Cuen was not a signatory to the contract. *See Elgohary*, 405 S.W.3d at 790–91 (stating that "signing a contract in a representative capacity does not bind the agent personally to the contract") (citing

11

RESTATEMENT (SECOND) OF AGENCY § 320). Rather, IWET was the signatory because Cuen signed the contract only as IWET's representative. *See id.* The parties dispute whether Cuen, as a non-signatory, could nevertheless enforce the arbitration clause based on an agency relationship with IWET, the signatory.

As stated above, non-signatories may be bound to an arbitration agreement under the law of agency. *See In re Labatt Food Serv.*, 279 S.W.3d at 644. Agency is not presumed, however, and Cuen had the burden to prove that an agency relationship existed between IWET and him. *See Rincones*, 520 S.W.3d at 589.

The only evidence on which Cuen relied to support his request for arbitration was the contract containing the arbitration clause, the authenticity and accuracy of which Sunergon does not dispute.[11] The contract states that IWET was "represented here by" Cuen and Cuen signed the contract as IWET's legal representative. But the contract does not evidence any conduct by IWET itself—as opposed to Cuen's conduct in purporting to represent IWET—indicating that Cuen had any authority to act on IWET's behalf, including by signing the contract as IWET's agent. *See*

---

[11] As stated above, Sunergon objects to the admissibility of the Spanish contract and its second translation under Texas Rule of Evidence 1009(a) because they were not filed together and because the second translation was served fewer than forty-five days before the hearing. *See* TEX. R. EVID. 1009(a). The contract is relevant to our inquiry only to the extent it shows that Cuen signed in the capacity of IWET's "legal representative" but not personally, which neither party disputes. Furthermore, Sunergon relies on the contract to argue that Cuen is not a signatory to it. Accordingly, we overrule Sunergon's issue objecting to the admissibility of the contract.

12

*Gaines*, 235 S.W.3d at 182 (stating that agent's authority to act depends on some communication by principal either to agent (for actual authority) or to third party (for apparent authority)). Both actual and apparent authority require evidence of the principal's conduct indicating the agent had authority to act on the principal's behalf. *Id.* Nothing in the contract or elsewhere in the record on appeal shows a communication by IWET to Cuen or to Sunergon indicating Cuen's authority to act on behalf of IWET. *See Jody James Farms*, 547 S.W.3d at 635 ("To establish an agency relationship, a non-signatory must show it was subject to the principal signatory's control and authorized to act as its agent.").

Moreover, there is some record evidence that Cuen lacked any authority to act on IWET's behalf. According to his own statements in a newspaper article, Cuen was not associated with IWET at the time he signed the contract. Although Cuen's statements are not evidence of IWET's conduct, which is necessary to establish an agency relationship, Cuen's statements constitute at least some evidence that Cuen himself did not believe that he possessed the authority which he purported to exercise. *See Gaines*, 235 S.W.3d at 182; *see also* TEX. R. EVID. 801(e)(2)(A) (providing that statement is not considered hearsay if statement is offered against opposing party and was made by party in individual or representative capacity).

The "strong presumption favoring arbitration" arises only after a valid arbitration agreement is established. *Wagner*, 2021 WL 1323413, at *4 (quoting

13

*Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013)). Because Cuen did not establish that he, as a non-signatory, can enforce the arbitration agreement, he has not met his burden to prove that a valid, enforceable arbitration agreement applies to Sunergon's claim against him. *See id.* On the record before us, we conclude that the trial court abused its discretion in finding that a valid and enforceable arbitration agreement required dismissal of Sunergon's claim against Cuen in favor of arbitration.[12]

We sustain Sunergon's first issue.

---

[12] Because we hold that Cuen did not establish a valid arbitration agreement on the basis of agency, we need not consider Sunergon's alternative challenges to the validity of the arbitration agreement, namely that the arbitration agreement was neither supported by consideration nor mandatory because the contract also allowed a party to refuse arbitration and opt for judicial proceedings. *See* TEX. R. APP. P. 47.1 (requiring courts of appeals to hand down written opinion "that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal"). We also need not consider Sunergon's third issue challenging the scope of the arbitration agreement. *See id.*

14

**Conclusion**

Cuen did not meet his burden to prove the existence of a valid, enforceable agreement to arbitrate the parties' dispute. Therefore, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.


April L. Farris
Justice

Panel consists of Justices Kelly, Guerra, and Farris.