**Opinion issued August 18, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00877-CV

———————————

**JUAN ENRIQUEZ, Appellant**

**V.**

**AHMED A. MORSY, M.D., Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 18-CV-0884**

---

## MEMORANDUM OPINION

Appellant, Juan Enriquez, challenges the trial court's order dismissing his suit against appellee, Ahmed A. Morsy, M.D., for negligence, violations of the Eighth Amendment and 42 U.S.C. § 1983, and equitable relief under the Texas Constitution. In three issues, Enriquez contends that the trial court—the Galveston

County district court—erred dismissing his claims against Dr. Morsy and that the Travis County district court erred in transferring his suit from Travis County, Texas to Galveston County, Texas.

We affirm in part and reverse and remand in part.

## Background

In his petition, Enriquez alleged that he, at the time he filed suit, was a prisoner[1] housed in the Michael Unit operated by the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID") in Tennessee Colony, Texas.[2] According to Enriquez, Dr. Morsy handled "the medical care and treatment

---

[1] On April 25, 1966, Enriquez "shot to death his girlfriend, her father, her brother, a woman he abducted, and a Texas Highway Patrolman." *Enriquez v. Procunier*, 752 F.2d 111, 113 (5th Cir. 1984) (federal habeas proceeding). On October 19, 1966, a jury convicted him of the offense of capital murder of the woman he abducted, and it assessed his punishment at death. *Id.*; *see also Enriquez v. State*, 429 S.W.2d 141, 142–45 (Tex. Crim. App. 1968) (affirming Enriquez's conviction); *Enriquez v. Hurley*, No. 03-10-00017-CV, 2010 WL 3271962, at *1 n.1 (Tex. App.—Austin Aug. 20, 2010, pet. denied) (mem. op.). That sentence was later commuted to life imprisonment. *Procunier*, 752 F.2d at 113; *Hurley*, 2010 WL 3271962, at *1 n.1 ("Enriquez's death sentence was commuted to life imprisonment after the statutory scheme under which his capital punishment was imposed was declared unconstitutional under the 1972 *Furman v. Georgia* decision."). In four other proceedings, Enriquez "pleaded guilty to murder and received three concurrent 99-year sentences and one 25-year sentence." *Procunier*, 752 F.2d at 113.

[2] The Michael Unit is located in Anderson County, Texas. *See Enriquez v. Orihuela*, No. 14-18-00147-CV, 2019 WL 6872946, at *1 & n.2 (Tex. App.—Houston [14th Dist.] Dec. 17, 2019, pet. filed) (mem. op.); *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 774 (Tex. App.—Beaumont 1992, writ denied) ("The Court may take judicial notice of the location of cities, counties, boundaries, dimensions, and distances because geographical facts such as these are easily ascertainable and capable of verifiable certainty."). In his brief, Enriquez noted that he is currently

of prisoners admitted to" the University of Texas Medical Branch at Galveston ("UTMB").

Enriquez alleged that in November 2014, he reported to prison infirmary staff that he was sick; he had lost his appetite and his food had a metallic taste. He reported that he was "seeing lights and black holes," had chills, and could barely walk. On December 4, 2014, Enriquez purportedly passed out in his cell. On December 10, 2014, Enriquez was seen by a nurse for high blood pressure, shaking, and diabetes. The nurse "referred [him] to a provider." On December 16, 2014, although Enriquez was scheduled to see a provider, he did not see one that day. Enriquez then sought help from Eddie Baker, the Senior Warden of the Michael Unit, "to help him get examined by a provider," but Baker did not do anything. When Enriquez returned to his living area that day, he was sent to the infirmary "due to his sickly appearance," but he was not treated by infirmary personnel. On December 23, 2014, a prison doctor examined Enriquez and requested an expedited transfer to John Sealy Hospital—a hospital associated with UTMB—for a cancer pathology evaluation. However, Baker did not transfer Enriquez, and prison employees refused to transport him to John Sealy Hospital.

housed in the Terrell Unit operated by TDCJ-CID and located in Brazoria County, Texas. *See Orihuela*, 2019 WL 6872946, at *1 & n.1.

3

Enriquez further alleged that in January 2015, a nurse practitioner diagnosed him with acute kidney failure and referred Enriquez to John Sealy Hospital. On January 14, 2015, Enriquez was examined at John Sealy Hospital by a hospital resident for prostate and kidney issues. Enriquez was admitted to the hospital and diagnosed with acute kidney failure and benign prostatic hyperplasia.

On January 15, 2015, Dr. Morsy was assigned to be the attendant physician for Enriquez. In regard to Enriquez's acute kidney failure, Enriquez alleged that Dr. Morsy did not inform him "of the extent of [his] kidney damage []or that [he] could die if his kidneys continued to fail." And Dr. Morsy did not address the damage to Enriquez's kidneys or treat Enriquez's kidney failure; instead, he approved Enriquez's discharge from the hospital on January 21, 2015, listing his condition as "fair." According to Enriquez, Dr. Morsy's "failure or refusal to treat [Enriquez's] kidney failure evince[d] a culpable state of mind, an awareness of facts from which the inference c[ould] be drawn that a substantial risk of serious harm to [Enriquez] existed, and a disregard for an excessive risk to [Enriquez's] health and life, which action or inaction resulted in further significant injury to [Enriquez] and in the unnecessary and wanton infliction of pain." Dr. Morsy was deliberately indifferent to Enriquez's serious medical need, and as a result, Enriquez continued to suffer kidney damage and his life was placed at risk.

4

In regard to Enriquez's benign prostatic hyperplasia, Enriquez alleged that on January 17, 2015, a supervising surgeon informed him that she would perform a procedure to correct his inability to urinate. But Dr. Morsy did not tell Enriquez, or explain to him, that the procedure would not ultimately be performed. And although Dr. Morsy knew that Enriquez had been diagnosed with benign prostatic hyperplasia and that the supervising surgeon felt that a surgical procedure needed to be performed, Dr. Morsy failed to or refused to provide Enriquez with the procedure necessary to correct his benign prostatic hyperplasia and address Enriquez's inability to urinate. Instead, Dr. Morsy discharged him from the hospital on January 21, 2015. Enriquez alleged that Dr. Morsy's "failure or refusal to correct [his benign prostatic hyperplasia] evince[d] a culpable state of mind, an awareness of facts from which the inference c[ould] be drawn that a substantial risk of serious harm to [Enriquez] existed, and a disregard for an excessive risk to [Enriquez's] health and life, which action or inaction resulted in further significant injury to [Enriquez] and the unnecessary and wanton infliction of pain."

On March 6, 2015, another nurse practitioner examined Enriquez and diagnosed him with "anemia due to kidney damage." Although Enriquez continued to complain of "kidney failure symptoms," nothing was done to treat his anemia.

On May 28, 2015, Enriquez was examined at John Sealy Hospital by a hospital resident. Enriquez asked the resident to address and treat the issues with his

kidneys, including his anemia. But the resident only addressed matters related to Enriquez's benign prostatic hyperplasia. According to Enriquez, while at the hospital, Dr. Eduardo Orihuela saw and examined Enriquez and "actively participated in the decision-making process." And Dr. Orihuela refused to comply with Enriquez's request for treatment related to his anemia and acute kidney failure. On June 8, 2015, Enriquez was again seen by the nurse practitioner who noted his anemia and ordered blood tests, but his anemia remained untreated and unaddressed.

Later in 2015, despite repeated requests to be treated for kidney and catheter issues, including a urinary tract infection ("UTI"), and to get the results of his previous blood tests, Enriquez did not see a provider for several months. On August 28, 2015, Enriquez was seen by Dr. Thomas Williams who ordered additional testing related to Enriquez's UTI, referred Enriquez for a "TURK procedure" to correct his benign prostatic hyperplasia, and scheduled Enriquez for an appointment to treat his UTI. Prison employees did not produce Enriquez for that appointment. On September 10, 2015, Enriquez was seen by Dr. Gary Wright who ordered new blood tests and scheduled Enriquez for a follow-up appointment. On October 7, 2015, prison employees did not produce Enriquez for his appointment. Because Enriquez's UTI became "so severe," on October 21, 2015, he was transported to Palestine Regional Medical Center and diagnosed with an epididymis infection.

6

In February 2016, Enriquez's epididymis infection returned, but prison nurses refused to examine him. On February 22, 2016, Enriquez was transported to the prison infirmary on a gurney, examined, and treated with antibiotics for ten days. The antibiotics were not effective, and on March 7, 2016, a nurse practitioner examined Enriquez and ordered antibiotic shots and oral antibiotics. But the nurse scheduled to administer the shots told Enriquez that they were no longer available, and the oral antibiotics did not resolve Enriquez's infection for thirty days. During those thirty days, Enriquez continued to suffer chills, fever, loss of appetite, loss of energy, and extreme pain.

According to Enriquez, Dr. Lannellee Linthicum, the Director of Medical Services for TDCJ-CID, had a policy and practice of allowing prisoners' serious medical needs to go unattended, undiagnosed, and untreated as dictated by prison policies promulgated and implemented by Dale Wainwright, the chairman of the Texas Board of Criminal Justice ("TBCJ"), Brad Livingston, the executive director of the TDCJ, and Baker. And in the Michael Unit, operated by TDCJ-CID, the providers did not have the necessary medication, testing capability, or supplies to treat the serious medical needs of prisoners. Such circumstances caused Enriquez to develop chronic UTIs and led to the providers' failures to detect Enriquez's acute kidney failure and infections. And Enriquez was denied treatment for his serious medical needs.

Enriquez brought suit against Wainwright, Dr. Morsy, Dr. Orihuela, Dr. Linthicum, Livingston, and Baker in Travis County district court in their individual and official capacities. Enriquez alleged claims against Dr. Morsy for violations of the Eighth Amendment and 42 U.S.C. § 1983[3] based on his "deliberate indifference to serious medical need of treatment for acute kidney failure," "deliberate indifference to serious medical need to correct benign prostatic hyperplasia," and "deliberate indifference to serious medical need for treatment of [UTIs]." Enriquez also alleged a negligence claim against Dr. Morsy and sought exemplary damages resulting from Dr. Morsy's "gross negligence, malice, or fraud."[4] Enriquez further sought equitable relief under the Texas Constitution, and in his prayer for relief, he requested a writ of mandamus "directing [all] [d]efendants to provide [him] with

---

[3]    *See* U.S. CONST. amend. VIII; 42 U.S.C. § 1983. 42 U.S.C. § 1983 provides a remedy when any "person" acting under color of state law deprives another of rights, privileges, or immunities protected by the United States Constitution or laws. *Thomas v. Collins*, 960 S.W.2d 106, 109 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). Enriquez, in his petition, referenced the Eighth Amendment and 42 U.S.C. § 1983 and cited a case involving the Eighth Amendment and § 1983 claims. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (deliberate indifference to serious medical needs constitutes unnecessary and wanton infliction of pain proscribed by Eighth Amendment and deliberate indifference to prisoner's serious illness or injury states cause of action under § 1983); *see also Williams v. Casal*, No. 08-03-00396-CV, 2004 WL 1932649, at *3 (Tex. App.—El Paso Aug. 31, 2004, no pet.) (mem. op.) (construing pro se prisoner's petition liberally in determining he had raised claim for violations of Eighth Amendment and 42 U.S.C. § 1983).

[4]    Enriquez alleged a claim of negligence against all "[d]efendants" and sought exemplary damages resulting from all "[d]efendants' gross negligence, malice, or fraud."

8

either transurethral microwave thermotherapy or transurethral needle ablation," performed by a doctor not connected with TDCJ or UTMB, to correct his benign prostatic hyperplasia; a writ of mandamus "directing [all] [d]efendants to provide [him] with a comprehensive evaluation of the damage to his kidneys and the treatment necessary to repair or restore them," performed by a doctor not connected to TDCJ or UTMB; a writ of mandamus "directing [all] [d]efendants to provide [him] with the treatment necessary to correct or cure [his] anemia," performed by a doctor not connected to TDCJ or UTMB; "[p]rospective equitable relief"; actual, exemplary, and nominal damages; pre- and post-judgment interest; and any other relief in equity or law.

In regard to venue, Enriquez alleged that venue was proper in Travis County under Texas Civil Practice and Remedies Code section 15.002 because Wainwright's principal office as the chairman of the TBCJ was located in Travis County and Livingston resided in Travis County and his principal office as the executive director of the TDCJ was in Travis County.[5] Enriquez also alleged that venue was proper in Travis County under Texas Civil Practice and Remedies Code section 15.041 because he sought mandamus relief "against the head of a state

---

[5] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a) ("Venue: General Rule").

9

agency."[6]  And venue was "proper in Travis County as the injunctive relief sought [was] ancillary to the tort and other claims made in th[e] lawsuit."

Dr. Morsy moved to transfer venue to Galveston County.[7]  Dr. Morsy argued that Travis County was not a proper venue and venue was mandatory in Galveston County under the Texas Tort Claims Act ("TTCA")[8] because Dr. Morsy was employed by UTMB, an agency of the State of Texas located in Galveston County, and all of "alleged tort theories against Dr. Morsy" were related to actions taken by Dr. Morsy while in the course and scope of his employment at UTMB.  And because Enriquez brought claims against Dr. Morsy in his official capacity as an employee of UTMB and the alleged misconduct related to his official duties, the lawsuit was inherently against UTMB and the mandatory venue provision under the TTCA applied.[9]  Further, Dr. Morsy asserted that all of the medical care, or lack thereof, about which Enriquez complained was provided by Dr. Morsy in Galveston County where UTMB is located.[10]

---

[6]     See id. § 15.014 ("An action for mandamus against the head of a department of the state government shall be brought in Travis County.").

[7]     Dr. Morsy answered, subject to his motion to transfer venue, generally denying the allegations in Enriquez's petition and asserting certain affirmative defenses.

[8]     See id. §§ 101.001–.109.

[9]     See id. § 101.102(a) ("A suit under [the TTCA] shall be brought in state court in the county in which the cause of action or part of the cause of action arises."); id. § 15.016 ("An action governed by any other state prescribing mandatory venue shall be brought in the county required by that statute.").

[10]    See id. § 15.002(a).

Dr. Morsy also filed a supplemental motion to transfer explaining that Enriquez's claims against him were confined to the medical treatment rendered at John Sealy Hospital—a hospital associated with UTMB—in Galveston County. And venue was proper in Galveston County, rather than Travis County, under both the TTCA and Texas Civil Practice and Remedies Code section 15.002 as Dr. Morsy resided in Galveston County and the medical care about which Enriquez complained occurred in Galveston County. Dr. Morsy asked the Travis County district court to sever Enriquez's claims against him and transfer Enriquez's suit against Dr. Morsy to Galveston County.

In response to Dr. Morsy's motion to transfer, Enriquez argued that venue was proper and mandatory in Travis County under Texas Civil Practice and Remedies Code section 15.014 because he had brought a "mandamus action[] against [certain] head[s] of . . . state agenc[ies]," namely, Wainwright, the chairman of the TBCJ, and Collier, the executive director of TDCJ,[11] and Dr. Morsy did not deny Enriquez's venue facts. In his response and attached declaration, Enriquez admitted that Dr. Morsy was an employee of UTMB.

The Travis County district court held a hearing on Dr. Morsy's motion to transfer venue and supplemental motion to transfer venue, and Enriquez appeared

---

[11] While Enriquez's case was pending, Bryan Collier replaced Livingston as the executive director of the TDCJ. *See Orihuela*, 2019 WL 6872946, at *3 n.5.

11

by telephone.[12] At the conclusion of the hearing, the Travis County district court entered an order finding that Galveston County was the "proper county for venue with respect to [Enriquez's] claims against [Dr.] Morsy" and that the claims brought by Enriquez against Dr. Morsy "involve[d] separate and distinct causes of action that could [have been] independently asserted against [Dr.] Morsy in a separate lawsuit[] and which [were] not so interwoven with the remainder of [Enriquez's] lawsuit so as to involve the same facts and issues." The Travis County district court thus ordered that Enriquez's claims against Dr. Morsy be severed and that Enriquez's suit against Dr. Morsy be transferred to Galveston County.

After Enriquez's suit was transferred to Galveston County district court—the trial court in this case[13]—Dr. Morsy moved to dismiss Enriquez's claims against him under the TTCA and Texas Civil Practice & Remedies Code Chapter 14. In regard to the TTCA, Dr. Morsy argued that Enriquez had brought a health care liability claim against him which had to be dismissed under Texas Civil Practice and Remedies Code section 101.106(f) because Dr. Morsy was an employee of UTMB at the time that he saw Enriquez as a patient, Enriquez's health care liability claim against Dr. Morsy "allege[d] negligent conduct that [was] 'within the general scope'

---

[12] A reporter's record from the trial court's hearing is contained in the appellate record. During the hearing, Dr. Morsy again requested that the trial court sever Enriquez's claims against him and transfer Enriquez's suit against him to Galveston County.

[13] Trial Court Cause No. 18-CV-0884.

12

of his employment as a physician at UTMB," and Enriquez's health care liability claim against Dr. Morsy "'could have been brought' against his employer, UTMB."[14]  In regard to Chapter 14, Dr. Morsy argued that dismissal was warranted because Enriquez had not established that he had exhausted his administrative remedies "provided by the penal grievance system"[15]

Dr. Morsy attached to his motion to dismiss his affidavit in which he testified that "[o]n and before January 2015[,] [he] was a faculty member in the Department of Internal Medicine, and then a fellow in the Division of Rheumatology until June 30, 2018, all at [UTMB]."  He also stated that he was a salaried employee of UTMB and received his paycheck from the State of Texas until June 30, 2018.  According to Dr. Morsy, his involvement with Enriquez's medical care while Enriquez was a patient at UTMB was pursuant to his employment with the Department of Internal Medicine, and all of his interaction with Enriquez was within the scope of his employment with UTMB.

---

[14]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) ("If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the TTCA] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.").

[15]  *See id.* § 14.005 ("Grievance System Decision; Exhaustion of Administrative Remedies"); *see also* TEX. GOV'T CODE ANN. § 501.008 ("Inmate Grievance System").

13

Dr. Morsy also attached to his motion to dismiss "a copy of [his] Memorandums of Appointment for the time frame of 09/01/14 thru 08/31/16." And he attached the affidavit of Carolee A. King, the Senior Vice President and General Counsel of UTMB. King testified that UTMB is part of the University of Texas System and is "a [s]tate governmental unit." According to King, from January 14, 2015 to July 1, 2018, Dr. Morsy was employed at UTMB "as a full-time physician and was continuously paid by UTMB . . . during that time, including the dates and times that . . . Enriquez allege[d] in his . . . [p]etition that he received medical care from Dr. Morsy at UTMB."

In response to Dr. Morsy's motion to dismiss, Enriquez argued that his claims against Dr. Morsy were not subject to dismissal under the TTCA because he had "sued [Dr.] Morsy under Title 42 U.S.C., Section 1983, for damages due to violation[s] of [his] Eighth Amendment right to be free from cruel and unusual punishment" as well as "Article 1, Section 19, of the Texas Constitution for equitable relief due to violation[s] of his rights under the Texas Bill of Rights." In other words, Enriquez asserted that he had not brought "tort claims" against Dr. Morsy, and, as such, the TTCA did not apply. Enriquez further argued that his suit against Dr. Morsy should not be dismissed under Texas Civil Practice and Remedies Code Chapter 14 because his claims were not subject to the penal grievance system as Texas Civil Practice and Remedies Code "[s]ection 14.005 applies only to a

defendant who is employed by the [TDCJ]" and Dr. Morsy was employed by UTMB.

After Dr. Morsy filed a reply to Enriquez's response, the trial court, without specifying the grounds, granted Dr. Morsy's motion to dismiss and dismissed Enriquez's suit against Dr. Morsy.

## Transfer of Venue

In his third issue, Enriquez argues that the Travis County district court erred in granting Dr. Morsy's motion to transfer venue from Travis County to Galveston County because he sought mandamus relief against "several heads of . . . department[s] of the State," venue was mandatory in Travis County under Texas Civil Practice and Remedies Code section 15.014, and venue was not mandatory in Galveston County under the TTCA.

We review a trial court's decision to grant a motion to transfer venue de novo. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b); *Jaska v. Tex. Dep't of Protective & Regulatory Servs.*, 106 S.W.3d 907, 910 (Tex. App.—Dallas 2003, no pet.); *see also Poock v. Wash. Mut. Bank, F.A.*, No. 01-08-00415-CV, 2009 WL 2050905, at *5 (Tex. App.—Houston [1st Dist.] July 16, 2009, no pet.) (mem. op). In doing so, we conduct an independent review of the entire record. TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b); *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 261–62 (Tex. 1994); *Poock*, 2009 WL 2050905, at *5. We look to determine

15

if there is any probative evidence that venue would have been proper in the county chosen by the plaintiff. *See Wilson*, 886 S.W.2d at 262. If so, it is reversible error to grant the venue motion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b).

Venue may be proper under general, mandatory, or permissive venue rules. *See Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 130 (Tex. 2018). The plaintiff, by filing the lawsuit, makes the first choice of venue. *See id.*; *see also In re Harding*, 563 S.W.3d 366, 370 (Tex. App.—Texarkana 2018, orig. proceeding). When the plaintiff files in a "proper" venue, "that choice of venue should be honored absent a mandatory venue statute that requires transfer." *See Perryman*, 546 S.W.3d at 130 (internal quotations omitted); *see also Kerri D. Condie, P.C. v. McLaughlin*, No. 05-18-00085-CV, 2019 WL 2353443, at *2–3 (Tex. App.—Dallas June 4, 2019, no pet.) (mem. op.); *Enriquez v. Villanueva*, No. 04-17-00719-CV, 2018 WL 4096386, at *3 (Tex. App.—San Antonio Aug. 29, 2018, pet. denied) (mem. op.) (mandatory venue provision mandates venue in specific county). "Proper venue" is defined by statute as (1) the venue required by the mandatory provisions of Subchapter B ("Mandatory Venue") or another statute prescribing mandatory venue; or (2) if (1) does not apply, the venue provided by . . . Subchapter A ("Definitions; General Rules") or Subchapter C ("Permissive Venue"). TEX. CIV. PRAC. & REM. CODE ANN. § 15.001(b) (internal quotations omitted); *see also id.* §§ 15.001–.007 ("Subchapter A. Definitions; General Rules");

16

*id.* §§ 15.011–.020 ("Subchapter B. Mandatory Venue"); *id.* §§ 15.031–.039 ("Subchapter C. Permissive Venue"). When a mandatory venue statute applies to a suit, the general and permissive venue rules must yield to the mandatory statute. *See id.* § 15.001(b).

A defendant may object to the plaintiff's venue choice by filing a motion to transfer venue. *See* TEX. R. CIV. P. 86; *In re Harding*, 563 S.W.3d at 570; *see also In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999). Once the plaintiff's venue choice is challenged, the plaintiff has the burden to present prima facie proof that venue is maintainable in the county of suit. TEX. R. CIV. P. 87(2)(a), (3)(a); *Tex. Windstorm Ins. Ass'n v. Boyle*, No. 01-13-00874-CV, 2014 WL 527574, at \*2 (Tex. App.—Houston [1st Dist.] Feb. 6, 2014, no pet.) (mem. op.); *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 347 (Tex. App.—San Antonio 2007, pet. denied) ("The plaintiff is given the first choice of the venue in which to file suit, but upon challenge by the defense, bears the burden to prove venue is maintainable in that county."). "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." *In re Henry*, 274 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding [mand. denied]) (internal quotations omitted); *see also* TEX. R. CIV. P. 87(3)(a); *Cramer v. State Farm Mut. Auto. Ins. Co.*, No. 01-08-00270-CV, 2008 WL 4837566, at \*2

17

(Tex. App.—Houston [1st Dist.] Nov. 6, 2008, no pet.) (mem. op) (venue facts are proven through pleadings, joint stipulations, and affidavits). If the plaintiff proves venue facts that support venue, the trial court must maintain the lawsuit in the county where it was filed unless the motion to transfer is based on "an established ground of mandatory venue." TEX. R. CIV. P. 87(3)(c); *see also Cramer*, 2008 WL 4837566, at *2. If the plaintiff fails to establish proper venue, the trial court must transfer venue to the county specified in the defendant's motion, provided that the defendant has proffered prima facie proof that its specified county is one of proper venue. *See In re Masonite*, 997 S.W.2d at 197; *Boyle*, 2014 WL 527574, at *2.

Enriquez argues that venue in Travis County was mandatory under Texas Civil Practice and Remedies Code section 15.014 because he "s[ought] mandamus [relief] against several defendants who are the head[s] of . . . department[s] of the State," namely, Wainwright, the chairman of the TBCJ, and Collier, the executive director of TDCJ, and venue was "fixed" in Travis County as to "all defendants" under Texas Civil Practice and Remedies Code section 15.004.

Texas Civil Practice and Remedies Code section 15.014 is titled "Head of State Department" and states that "[a]n action for mandamus against the head of a department of the state government shall be brought in Travis County." TEX. CIV. PRAC. & REM. CODE ANN. § 15.014. Section 15.014 is a mandatory venue statute. *See id.* §§ 15.011–.020 ("Subchapter B. Mandatory Venue"); *see also Enriquez v.*

18

*Orihuela*, No. 14-18-00147-CV, 2019 WL 6872946, at \*4 (Tex. App.—Houston [14th Dist.] Dec. 17, 2019, pet. filed) (mem. op.); *Cont'l Cas. Co. v. Rivera*, 124 S.W.3d 705, 713 (Tex. App.—Austin 2003, pet. denied); *Jaska*, 106 S.W.3d at 912. Under Texas Civil Practice and Remedies Code section 15.004, a mandatory venue provision, such as section 15.014, governs all of a plaintiff's claims arising out of the same transaction, occurrence, or series of transactions or occurrences. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.004 ("In a suit in which a plaintiff properly joins two or more claims or causes of action arising from the same transaction, occurrence, or series of transactions or occurrences, and one of the claims or causes of action is governed by the mandatory venue provisions . . . , the suit shall be brought in the county required by the mandatory venue provision."); *In re Eastman Chem. Co.*, No. 13-18-00268-CV, 2019 WL 2529042, at \*3 (Tex. App.—Corpus Christi–Edinburg June 20, 2019, no pet.) (mem. op.); *see also Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 447 (Tex. 2017) (when mandatory venue provision implicated, "the tag-along venue provision in section 15.004 also applies").

We note that the Travis County district court, in its order granting Dr. Morsy's motion to transfer venue, also granted Dr. Morsy's request to sever Enriquez's claims against him into a separate lawsuit. In doing so, the Travis County district court found that Enriquez's claims against Dr. Morsy "involve[d] separate and distinct causes of action that could [have been] independently asserted against [Dr.]

19

Morsy in a separate lawsuit[] and which [were] not so interwoven with the remainder of [Enriquez's] lawsuit so as to involve the same facts and issues." *See* TEX. R. CIV. P. 41 ("Any claim against a party may be severed and proceeded with separately."); *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990); *Pierce v. Reynolds*, 329 S.W.2d 76, 78 (Tex. 1959). The Travis County district court thus ordered Enriquez's claims against Dr. Morsy to be severed and, after severance, for Enriquez's suit against Dr. Morsy to be transferred to Galveston County.

Enriquez did not object to the Travis County district court's severance in the trial court and, thus, is not entitled to complain on appeal about any purported error by the Travis County district court in severing Enriquez's claims against Dr. Morsy into a separate lawsuit. *See* TEX. R. APP. P. 33.1; *Pierce*, 329 S.W.2d at 78 ("Defendant did not object to the severance, and is therefore not in position to complain of a mere error in granting the same."); *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *12 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op.) (plaintiff waived its right to complain about severance of its claims against certain defendants because it did not object to severance in trial court).

Even if Enriquez had preserved a complaint about the Travis County district court's severance of his claims against Dr. Morsy, Enriquez only asserts on appeal

20

that the Travis County district court "did not render a judgment severing [Dr.] Morsy from the original lawsuit." Contrary to Enriquez's assertion, the Travis County district court's order, titled "Order on Severance and Granting Defendant Ahmed A. Morsy, MD.'s Motion to Transfer Venue," clearly states that Enriquez's "causes of action against [Dr.] Morsy shall be severed and assigned a new cause number . . . severing both [Dr.] Morsy as a party and the claims against him from th[e] action." The order further states that "after severance" Enriquez's suit against Dr. Morsy "shall be transferred to Galveston County."

A trial court's written order controls. *See Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see also Tex. Ethics Comm'n v. Sullivan*, No. 02-15-00103-CV, 2015 WL 6759306, at *4 (Tex. App.—Fort Worth Nov. 5, 2015, pet. denied) (mem. op.) ("The order controls over any statements made at the hearing."). And Enriquez does not assert on appeal that the Travis County district court erred in severing his claims against Dr. Morsy into a separate lawsuit; here, he merely asserts that the district court did not do so. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 658 (declaring trial court's decision to grant severance will not be reversed unless trial court abused its discretion).

Based on the foregoing, we hold that Enriquez, to the extent that he complains about the Travis County district court's severance of his claims against Dr. Morsy,

21

has not preserved his complaint for appeal. And as such, we consider Enriquez's remaining issues based only on his severed claims against Dr. Morsy. *See Orihuela*, 2019 WL 6872946, at *4.

In his petition, Enriquez did not allege any venue facts specific to Dr. Morsy. In the "[p]arties" section of his petition, Enriquez alleged that Dr. Morsy was a resident of Texas and could be served at UTMB's address in Galveston, Texas. Enriquez further alleged that Dr. Morsy was charged with the medical care and treatment of prisoners admitted to UTMB and at all relevant times "acted under color of law."

In the "[f]acts" and "[c]ause[s] of action" sections of his petition, Enriquez alleged that on January 14, 2015, he was examined at John Sealy Hospital—a hospital associated with UTMB—for prostate and kidney issues and diagnosed with acute kidney failure and benign prostatic hyperplasia. On January 15, 2015, Dr. Morsy was assigned to be the attendant physician for Enriquez. Enriquez alleged, in regard to his acute kidney failure, that Dr. Morsy did not inform him "of the extent of [his] kidney damage []or that [he] could die if his kidneys continued to fail." Dr. Morsy also did not address the damage to Enriquez's kidneys or treat his acute kidney failure. Instead, Dr. Morsy approved Enriquez's discharge from the hospital and listed his condition as "fair."

22

In regard to Enriquez's benign prostatic hyperplasia, Enriquez alleged that although a supervising surgeon, on January 17, 2015, told Enriquez that she would perform a procedure to correct his inability to urinate, Dr. Morsy failed to tell Enriquez, or explain to him, that the procedure would not ultimately be performed. And although Dr. Morsy knew that Enriquez was diagnosed with benign prostatic hyperplasia and that the supervising surgeon felt that a surgical procedure needed to be performed, Dr. Morsy failed to or refused to provide Enriquez with the procedure necessary to correct his benign prostatic hyperplasia and address Enriquez's inability to urinate. Instead, Dr. Morsy discharged him from the hospital.

Dr. Morsy challenged Enriquez's venue choice of Travis County. Dr. Morsy asserted that venue was proper in Galveston County under the TTCA's mandatory venue provision[16] as well as under Texas Civil Practice and Remedies Code section 15.002, as Dr. Morsy resided in Galveston County and Enriquez's claims against him related to the medical care Enriquez did, or did not receive, at John Sealy

---

[16] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.102(a) ("A suit under [the TTCA] shall be brought in state court in the county in which the cause of action or part of the cause of action arises."); *see also id.* § 15.016 ("An action governed by any other statute prescribing mandatory venue shall be brought in the county required by that statute."). Due to our disposition below, we need not address whether venue was mandatory in Galveston County under the TTCA. *See Orihuela*, 2019 WL 6872946, at *5 n.8; *see also* TEX. R. APP. P. 47.1; *Guar. Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986); *Mile High Equip. Co. v. Rider*, 622 S.W.2d 459, 461 (Tex. App.—Tyler 1981, no writ) (venue order may be sustained on any legal theory).

Hospital—a hospital associated with UTMB—in Galveston County in January 2015. In his response to Dr. Morsy's motion to transfer venue and his declaration, Enriquez admitted that Dr. Morsy was an employee of UTMB.

Additionally, in his affidavit, Dr. Morsy testified that "[o]n and before January 2015[,] [he] was a faculty member in the Department of Internal Medicine, and then a fellow in the Division of Rheumatology until June 30, 2018, all at [UTMB]." He also stated that he was a salaried employee of UTMB and received his paycheck from the State of Texas until June 30, 2018. According to Dr. Morsy, his involvement with Enriquez's medical care while Enriquez was a patient at UTMB was pursuant to his employment with the Department of Internal Medicine, and all of his interaction with Enriquez was within the scope of his employment with UTMB.

Although Enriquez asserts that venue in Travis County was mandatory under Texas Civil Practice and Remedies Code section 15.014 because he "s[ought] mandamus [relief] against several defendants who are the head[s] of . . . department[s] of the State" and venue was "fixed" in Travis County as to "all defendants" under Texas Civil Practice and Remedies Code section 15.004, after Enriquez's claims against Dr. Morsy were severed into a separate lawsuit, the state department heads were no longer part of Enriquez's suit against Dr. Morsy. So there no longer remained a proper basis for mandatory venue in Travis County under

24

section 15.014 in Enriquez's suit against Dr. Morsy. *See Orihuela*, 2019 WL 6872946, at *5; *see also Telfer v. Adams*, No. 05-17-01387-CV, 2019 WL 494023, at *3 (Tex. App.—Dallas Feb. 8, 2019, no pet.) (mem. op.) (when plaintiffs did not challenge severance of claims, no mandatory venue existed based on claims against previously-joined party).

We next consider whether Enriquez presented prima facie proof that venue otherwise was proper in Travis County. Texas Civil Practice and Remedies Code section 15.002—the general venue rule—provides that all lawsuits shall be brought:

> (1)    in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;
>
> (2)    in the county of [the] defendant's residence at the time the cause of action accrued if [the] defendant is a natural person;
>
> (3)    in the county of the defendant's principal office in this state, if the defendant is not a natural person; or
>
> (4)    if [s]ubdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a); *see also Boyle*, 2014 WL 527574, at *2. Our review of the entire record does not reveal any allegation or probative evidence tending to support that venue was proper in Travis County under Texas Civil Practice and Remedies Code section 15.002. *See Orihuela*, 2019 WL 6872946, at *5; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a); *Boyle*, 2014 WL 527574, at *2 ("In determining whether a county bears a substantial connection to

25

the suit, we examine the plaintiff's claim[s].");  *cf. Christerson v. Speer*, No. 01-16-00469-CV, 2017 WL 1520449, at *4 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, pet. denied) (mem. op.) ("None of the [defendants were] alleged to have committed or performed any act or omission in Harris County relat[ed] to the [plaintiffs'] claims.");  *Shaumoun & Norman, LLP v. Yarto Int'l. Grp., LP*, 398 S.W.3d 272, 289–90 (Tex. App.—Corpus Christi–Edinburg 2012, pet. dism'd) (plaintiff could not argue that "a substantial part of the events giving rise to his claims" occurred in particular county where, he, in his petition, "did not allege that *any* part of the events giving rise to his claims [against the defendant] occurred in that county" (internal quotations omitted)).  Because Enriquez did not put forth prima facie evidence that venue was proper in Travis County, we conclude that venue was not maintainable there.  *See Double Diamond-Del., Inc. v. Alfonso*, 487 S.W.3d 265, 275–76 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.).

But the record does demonstrate that venue is proper in Galveston County under Texas Civil Practice and Remedies Code section 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to Enriquez's claims concerning the medical care, or lack thereof, provided by Dr. Morsy was provided by Dr. Morsy in Galveston County where John Sealy Hospital—a hospital associated with UTMB—is located.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1); *Orihuela*, 2019 WL 6872946, at *5; *see also Boyle*, 2014 WL 527574, at *2 ("In

26

determining whether a county bears a substantial connection to the suit, we examine the plaintiff's claim[s]."); *Double Diamond*, 487 S.W.3d at 275–76 (after concluding plaintiff did not put forth prima facie evidence showing venue proper in county, determining whether defendant put forth prima facie evidence in support of county to which defendant wanted to transfer suit).  Thus, Dr. Morsy established that venue is proper in Galveston County for Enriquez's suit against him.  *See Orihuela*, 2019 WL 6872946, at *5.

Based on the foregoing, we conclude that the Travis County district court did not err in transferring Enriquez's severed claims against Dr. Morsy to Galveston County.  *See Orihuela*, 2019 WL 6872946, at *5.

We overrule Enriquez's third issue.

## Dismissal

In his second issue, Enriquez argues that the trial court erred in dismissing his claims against Dr. Morsy because Texas Civil Practice and Remedies Code Chapter 14 does not apply to Dr. Morsy as he was not employed by the TDCJ.  In his first issue, Enriquez argues that the trial court erred in dismissing his claims against Dr. Morsy because the TTCA does not apply to his claims.

## A.    Chapter 14

Texas Civil Practice and Remedies Code Chapter 14 governs civil suits, other than suits brought under the Texas Family Code, filed by inmates in which the

inmate claims indigence by filing an affidavit or unsworn declaration of the inability to pay the court costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.001–.014; *see also Orihuela*, 2019 WL 6872946, at \*6; *Burleson v. Tex. Dep't of Crim. Justice*, No. 01-17-00565-CV, 2018 WL 5289140, at \*1 (Tex. App.—Houston [1st Dist.] Oct. 25, 2018, no pet.) (mem. op.); *Thomas v. Knight*, 52 S.W.3d 292, 294 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied) ("Inmate litigation (except suits brought under the family code) in which the inmate files an affidavit or unsworn declaration of inability to pay costs is governed by special procedural rules set out in chapter fourteen of the civil practice and remedies code."). This Court reviews the dismissal of an inmate lawsuit under Chapter 14 for an abuse of discretion. *See Burleson*, 2018 WL 5289140, at \*1; *Hamilton v. Williams*, 298 S.W.3d 334, 339 (Tex. App.—Fort Worth 2009, pet. denied). A trial court abuses its discretion if it acts arbitrarily, capriciously, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The prison grievance system provides an administrative remedy for claims that would consume valuable judicial resources with little offsetting benefit. *Diles v. Henderson*, 76 S.W.3d 807, 809 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). Chapter 14 sets forth procedural requirements that an inmate must satisfy as a prerequisite for filing and maintaining suit in Texas state court. *Hamilton*, 298 S.W.3d at 339; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005; *Moorhead v.*

28

*Salinas*, No. 13-18-00367-CV, 2019 WL 2847447, at *1 (Tex. App.—Corpus Christi–Edinburg July 3, 2019, no pet.) (mem. op.) (discussing procedural requirements); *Lilly v. Northrep*, 100 S.W.3d 335, 336 (Tex. App.—San Antonio 2002, pet. denied) ("Prison inmates who file suits in Texas state courts *pro se* and who seek to proceed *in forma pauperis* must comply with numerous procedural requirements set forth in Chapter 14 of the [Texas Civil Practice and Remedies] Code. A failure to fulfill those procedural requirements will result in dismissal of an inmate's action." (internal citations omitted)). For instance, before filing suit, an inmate must exhaust all administrative remedies through a grievance system within the TDCJ. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005; *Smith v. State*, No. 06-18-00094-CV, 2019 WL 2017524, at *1 (Tex. App.—Texarkana May 8, 2019, no pet.) (mem. op.); *Burleson*, 2018 WL 5289140, at *2. A trial court may dismiss an inmate's lawsuit for failing to comply with the procedural requirements of Chapter 14. *See Hamilton*, 298 S.W.3d at 339; *Scott v. Gallagher*, 209 S.W.3d 262, 265 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Relevant to this case, the failure of the inmate to exhaust administrative remedies is a ground for dismissal under Chapter 14. *See In re Douglas*, No. 01-10-00482-CV, 2012 WL 682308, at *1 (Tex. App.—Houston [1st Dist.] Mar. 1, 2012, no pet.) (mem. op.); *Leachman v. Dretke*, 261 S.W.3d 297, 309 (Tex. App.—Fort Worth 2008, no pet.).

29

In his motion to dismiss, Dr. Morsy argued that Enriquez's claims against him should be dismissed under Texas Civil Practice and Remedies Code Chapter 14 because Enriquez had not established that he had exhausted the administrative remedies "provided by the penal grievance system." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005 ("Grievance System Decision; Exhaustion of Administrative Remedies"); *see also* TEX. GOV'T CODE ANN. § 501.008 ("Inmate Grievance System"). In response, Enriquez argued that his suit against Dr. Morsy could not be dismissed under Chapter 14 because his claims were not subject to the penal grievance system as Texas Civil Practice and Remedies Code "[s]ection 14.005 applies only to a defendant who is employed by the [TDCJ]" and Dr. Morsy was employed by UTMB.

Our sister appellate court has addressed the exact arguments made by Dr. Morsy and Enriquez in a corresponding case. In fact, *Orihuela* arises out of the same litigation initially filed by Enriquez in Travis County district court. *See* 2019 WL 6872946, at *1–3. There, in addition to the claims Enriquez brought against Dr. Morsy and other defendants, Enriquez alleged that Dr. Orihuela—another doctor employed by UTMB—had examined Enriquez at John Sealy Hospital in Galveston County and "refused to comply with [Enriquez's] request for treatment for his kidneys and for [his] anemia." *Id.* at *1 (first alteration in original) (internal quotations omitted). Enriquez brought claims against Dr. Orihuela for violations of

30

the Eighth Amendment and 42 U.S.C. § 1983 based on his "deliberate indifference to serious medical need of treatment for acute kidney failure," "deliberate indifference to serious medical need to correct benign prostatic hyperplasia," "deliberate indifference to serious medical need of treatment for anemia," and "deliberate indifference to serious medical need for treatment of [UTIs]."[17] *Id.* at *1–2, *9–11 (noting Enriquez brought "federal statutory claims based on Eighth Amendment violations pursuant to [42 U.S.C. §] 1983"). Enriquez also brought a claim of negligence against Dr. Orihuela and sought exemplary damages resulting from Dr. Orihuela's "gross negligence, malice, or fraud."[18] *Id.* at *2, *10.

Because Enriquez's suit against Dr. Orihuela was filed in Travis County district court, Dr. Orihuela, like Dr. Morsy, moved to transfer venue to Galveston County. *Id.* at *2. The Travis County district court granted Dr. Orihuela's motion to transfer and severed Enriquez's claims against Dr. Orihuela so that they could be

---

[17]     *See* U.S. CONST. amend. VIII; 42 U.S.C. § 1983.

[18]     As in the present case, Enriquez sought equitable relief under the Texas Constitution, and in his prayer for relief in *Orihuela*, he requested a writ of mandamus directing all "[d]efendants" to provide him with certain treatment for his benign prostatic hyperplasia to be performed by doctors not connected with TDCJ or UTMB; a writ of mandamus directing all "[d]efendants" to provide him with evaluation and treatment for his kidneys to be performed by doctors not connected to TDCJ or UTMB; a writ of mandamus directing all "[d]efendants" to provide him with treatment for his anemia to be performed by doctors not connected to TDCJ or UTMB; prospective equitable relief; actual, exemplary, and nominal damages; pre- and post-judgment interest; and any other relief in equity or law. *See Orihuela*, 2019 WL 6872946, at *2.

tried separately in Galveston County. *Id.* at *3. After Enriquez's suit against Dr. Orihuela was transferred to Galveston County district court, Dr. Orihuela filed a motion to dismiss Enriquez's claims against him pursuant to the TTCA and Texas Civil Practice & Remedies Code Chapter 14. *Id.* Ultimately, the Galveston County district court granted Dr. Orihuela's motion, dismissing Enriquez's claims against Dr. Orihuela. *Id.*

On appeal, the Fourteenth Court of Appeals addressed whether the trial court erred in dismissing Enriquez's claims against Dr. Orihuela under Texas Civil Practice and Remedies Code Chapter 14 because Dr. Orihuela was employed by UTMB and not TDCJ. *Id.* at *6–8. In doing so, the court examined the pertinent statutes—Texas Civil Practice and Remedies Code section 14.005 and Texas Government Code section 501.008. *Id.* (noting "resolution of [Enriquez's] issue involve[d] statutory construction, which [was] a question of law [the court] review[ed] de novo").

As discussed in *Orihuela*, Texas Civil Practice and Remedies section 14.005, titled "Grievance System Decision; Exhaustion of Administrative Remedies," states:

> (a)    An inmate who files a claim that is subject to the grievance system established under Section 501.008, Government Code, shall file with the court:
>
> > (1)    an affidavit or unsworn declaration stating the date that the grievance was filed and the date the written decision described by Section 501.008(d), Government Code, was received by the inmate; and

> (2)     a copy of the written decision from the grievance system.
>
> (b)     A court shall dismiss a claim if the inmate fails to file the claim before the 31st day after the date the inmate receives the written decision from the grievance system.

TEX. CIV. PRAC. & REM. CODE ANN. § 14.005(a)–(b).  And Texas Government Code section 501.008(a), titled "Inmate Grievance System," provides, in pertinent part:

> The department shall develop and maintain a system for the resolution of grievances by inmates housed in facilities operated by the department or under contract with the department . . . . A remedy provided by the grievance system is the exclusive administrative remedy available to an inmate *for a claim for relief against the department* that arises while the inmate is housed in a facility operated by the department or under contract with the department, other than a remedy provided by writ of habeas corpus challenging the validity of an action occurring before the delivery of the inmate to the department or to a facility operated under contract with the department.

TEX. GOV'T CODE ANN. § 501.008(a) (emphasis added).  The term "department" as used in section 501.008(a) means the TDCJ.  *See* TEX. GOV'T CODE ANN. § 491.001(a)(3); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 14.001(2) (defining "[d]epartment" in same manner); *Orihuela*, 2019 WL 6872946, at *7.

In analyzing these statutes, the Fourteenth Court of Appeals explained that "[w]hen read in conjunction, the statutory language clearly and unambiguously indicate[d]" that section 501.008's inmate grievance system, which "provid[ed] for an exclusive administrative remedy that [an] inmate[] must exhaust [before filing suit in Texas state court] and [that inmates must] show compliance with" in

33

accordance with Texas Civil Practice and Remedies Code section 14.005, only applied to an inmate pursuing a claim *against the TDCJ* that arose while the inmate was housed in a facility operated by the TDCJ or under contract with the TDCJ. *Orihuela*, 2019 WL 6872946, at \*7–8; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005(a); TEX. GOV'T CODE ANN. § 501.008(a). Stated differently, the court concluded that the Chapter 14 requirement that an inmate exhaust all administrative remedies through a grievance system within the TDCJ before filing suit in Texas state court did not apply when the inmate filed suit against a non-TDCJ employee. *See Orihuela*, 2019 WL 6872946, at \*7–8; *see also Avila v. Purvis*, No. 01-14-00763-CV, 2015 WL 1400532, at \*2 (Tex. App.—Houston [1st Dist.] Mar. 24, 2015, no pet.) (mem. op.) ("[I]nmate complaints *about TDCJ employees*[] are subject to the grievance procedures set out in Chapter 14." (emphasis added)); *In re Douglas*, 2012 WL 682308, at \*1–2 (holding because inmate brought suit against TDCJ employee, he was required to show he had exhausted his administrative remedies before filing suit in Texas state court); *Leachman*, 261 S.W.3d at 312 (section 14.005's administrative exhaustion requirement did not apply to inmate's claim against non-TDCJ employee).

Thus, because Enriquez brought claims against Dr. Orihuela—an employee of UTMB and not an employee of TDCJ—and Enriquez did not seek relief against TDCJ in his suit against Dr. Orihuela, the Fourteenth Court of Appeals held that

Enriquez's claims against Dr. Orihuela were "not subject to the grievance system established by [Texas Government Code] section 501.008[] and . . . [were] not subject to [Texas Civil Practice and Remedies Code] section 14.005's requirement [of] exhaust[ion] [of] administrative remedies." *Orihuela*, 2019 WL 6872946, at *8. Accordingly, the court concluded that the Galveston County district court erred in dismissing Enriquez's claims against Dr. Orihuela under Texas Civil Practice and Remedies Code Chapter 14. *Id.*

Here, we are asked to analyze a virtually identical situation. The parties do not dispute that Dr. Morsy was an employee of UTMB and not an employee of TDCJ. And Enriquez's claims against Dr. Morsy did not seek relief against TDCJ. Thus, Enriquez's claims were "not subject to the grievance system established by [Texas Government Code] section 501.008[] and . . . [were] not subject to [Texas Civil Practice and Remedies Code] section 14.005's requirement [of] exhaust[ion] [of] administrative remedies." *Id.* We hold that the trial court, to the extent that it did so, erred in dismissing Enriquez's claims against Dr. Morsy based on Enriquez's failure to exhaust administrative remedies as required by Texas Civil Practice and Remedies Code Chapter 14. *See id.*

We sustain Enriquez's second issue.

**B.** **TTCA**

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Although the terms "sovereign immunity" and "governmental immunity" are often used interchangeably, sovereign immunity "extends to various divisions of state government, including agencies, boards, hospitals, and universities," while governmental immunity "protects political subdivisions of the State, including counties, cities, and school districts." *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006); *see also Odutayo v. City of Houston*, No. 01-12-00132-CV, 2013 WL 1718334, at \*2 n.8 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.). Without an express waiver of sovereign immunity or governmental immunity, courts do not have subject-matter jurisdiction over suits against the State or its political subdivisions. *See State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–25 (Tex. 2004).

The TTCA provides a limited waiver of immunity and has an election-of-remedies provision intended to force a plaintiff at the outset of his suit to determine whether to sue an employee of a governmental unit in his individual

36

capacity or whether to sue a governmental unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106 ("Election of Remedies"); *Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019) (section 101.106 "requir[es] plaintiffs to choose between suing the governmental unit under the [TTCA] and suing a responsible employee in an individual capacity"); *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2) (defining "[e]mployee" (internal quotations omitted)), (3) (defining "[g]overnmental unit" (internal quotations omitted)); *Orihuela*, 2019 WL 6872946, at *8. If a plaintiff chooses to sue only an employee, that employee—if he can meet the requirements of Texas Civil Practice and Remedies Code section 101.106(f)—can force the plaintiff to dismiss his suit against the employee and to file an amended petition against the governmental unit.

Section 101.106(f) states:

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). Thus, a defendant employee of a governmental unit is entitled to dismissal under section 101.106(f) if he establishes

37

that (1) he, the defendant, was an employee of a governmental unit, (2) the plaintiff's suit was based on conduct within the scope of the defendant's employment with the governmental unit, and (3) the suit could have been brought against the governmental unit under the TTCA. *See id.*; *Laverie*, 517 S.W.3d at 752; *Rivera v. Garcia*, 589 S.W.3d 242, 246 (Tex. App.—San Antonio 2019, no pet.); *Orihuela*, 2019 WL 6872946, at *9; *Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5) (defining "[s]cope of employment" (internal quotations omitted)). We review the trial court's ruling on a motion to dismiss under section 101.106(f) de novo. *Garza*, 574 S.W.3d at 400; *Garcia*, 589 S.W.3d at 245; *see also Orihuela*, 2019 WL 6872946, at *9 ("A motion to dismiss filed by an employee pursuant to section 101.106(f) essentially acts as a challenge to the trial court's subject-matter jurisdiction, which we review de novo.").

In his motion to dismiss, Dr. Morsy argued that Enriquez's health care liability claim against him had to be dismissed because he was an employee of UTMB at the time that he saw Enriquez as a patient, Enriquez's health care liability claim against him "allege[d] negligent conduct that [was] 'within the general scope' of his employment as a physician at UTMB," and Enriquez's health care liability claim against Dr. Morsy could have been brought against his employer, UTMB. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f); *cf. Orihuela*, 2019 WL 6872946, at *9.

38

In regard to the first prong, there is no dispute that Dr. Morsy was employed by UTMB—a governmental unit of the State of Texas—at the time of the alleged conduct at issue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3) (defining "[g]overnmental unit" (internal quotations omitted)); *Orihuela*, 2019 WL 6872946, at *9; *Noah v. Univ. of Tex. Med. Branch at Galveston*, 176 S.W.3d 350, 355 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (UTMB is "a state governmental unit").

But as for prongs two and three, in response to Dr. Morsy's motion, Enriquez argued that his claims against Dr. Morsy were not subject to dismissal under the TTCA because he "sued [Dr.] Morsy under Title 42 U.S.C., Section 1983, for damages due to violation[s] of [his] Eighth Amendment right to be free from cruel and unusual punishment" as well as "Article 1, Section 19, of the Texas Constitution for equitable relief due to violation[s] of his rights under the Texas Bill of Rights." In other words, Enriquez asserted that he had not brought "tort claims" against Dr. Morsy, and, as such, the TTCA did not apply.

We disagree with Enriquez that the TTCA and section 101.106(f) have no application to this case. Enriquez's claims included a negligence claim against Dr. Morsy, seeking exemplary damages based on Dr. Morsy's "gross negligence, malice, and fraud" related to conduct that occurred while Dr. Morsy was providing medical care, or failing to provide medical care, at John Sealy Hospital and within

39

the general scope of his employment with UTMB. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5) (defining "[s]cope of employment" (internal quotations omitted)); *Orihuela*, 2019 WL 6872946, at *10; *see also Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (employee's act not within scope of employment "when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer" (internal quotations omitted)); *Lopez v. Serna*, 414 S.W.3d 890, 894 (Tex. App.—San Antonio 2013, no pet.) ("[A]n employee's scope of authority extends to job duties to which the official has been assigned, even if the official errs in completing the task."). Further, Enriquez's alleged tort claims could have been brought against UTMB under the TTCA.[19] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f); *Alexander*, 435 S.W.3d at 791 (suit against employee in his official capacity "is essentially a suit against the employer" as it "seeks to impose liability against the governmental unit rather than on the individual specifically named" (internal quotations omitted)); *Orihuela*, 2019 WL 6872946, at *10; *see also Franka v. Velasquez*, 332 S.W.3d 367, 369, 375–85 (Tex. 2011) (for purposes of section 101.106(f), tort claim "could have been brought under" TTCA even if tort claim did not fall within TTCA's limited waiver of

---

[19] Enriquez did not allege that Dr. Morsy acted *ultra vires*. *See Orihuela*, 2019 WL 6872946, at *10; *see also Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019) ("A suit against a governmental employee in an official capacity is effectively a suit against the employing governmental unit, except in those cases alleging the employee has acted *ultra vires*.").

immunity); *Garcia*, 253 S.W.3d at 659 ("Because the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be under [the TTCA] for purposes of section 101.106." (internal quotations omitted)).

Based on the foregoing, we hold that the trial court did not err dismissing Enriquez's tort claims against Dr. Morsy based on Texas Civil Practice and Remedies Code section 101.106(f). *Cf. Anderson*, 365 S.W.3d at 126.

But Enriquez brought additional claims against Dr. Morsy for violations of the Eighth Amendment and 42 U.S.C. § 1983 based on his "deliberate indifference to serious medical need of treatment for acute kidney failure," "deliberate indifference to serious medical need to correct benign prostatic hyperplasia," and "deliberate indifference to serious medical need for treatment of [UTIs]." And Enriquez sought equitable relief under the Texas Constitution.

Texas Civil Practice and Remedies Code section 101.106(f) states that it applies only to suits that are brought "under this chapter." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f); *Fontenot v. Stinson*, 369 S.W.3d 268, 272–73 (Tex. App.—Houston [14th Dist.] 2011), *aff'd*, 435 S.W.3d 793 (Tex. 2014). A suit brought "under this chapter" includes any suit in which a plaintiff alleges a common law tort claim, regardless of whether the TTCA waives immunity for that claim.

41

*Fontenot*, 369 S.W.3d at 272–73 (internal quotations omitted). A claim brought under 42 U.S.C. § 1983 does not constitute a suit brought "under this chapter." *Id.*; *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." (internal quotations omitted)); *Green v. Nueces Cty.*, Civil Action No. C-09-316, 2010 WL 918972, at *5 (S.D. Tex. Mar. 15, 2010) (order) ("It is well established that a Section 1983 claim is not a claim brought under the [TTCA]." (alteration in original) (internal quotations omitted)); *Walker v. Hartman*, No. 09-19-00061-CV, 2020 WL 1465973, at *6 (Tex. App.—Beaumont Mar. 26, 2020, no pet.) (mem. op.) (plaintiff's § 1983 claims were not claims under TTCA); *Swain v. Hutson*, No. 2-09-038-CV, 2009 WL 3246750, at *3–6 (Tex. App.—Fort Worth Oct. 8, 2009, pet. denied) (mem. op.) (explaining "Section 1983 provides a separate and distinct legal basis from the [TTCA] for challenging the actions of a governmental employee" and dismissal under section 101.106 is not permitted for claims arising, not under TTCA, but under "another statutory basis, such as [S]ection 1983"). The same can be said for Enriquez's claim for equitable relief under the Texas Constitution. *See Orihuela*, 2019 WL 687246, at *10; *see also City of Webster v. Myers*, 360 S.W.3d 51, 57–60 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (indicating constitutional claims seeking equitable relief do not fall under TTCA).

Still yet, Dr. Morsy, in his motion to dismiss, did not appear to move for dismissal of Enriquez's claims for violations of the Eighth Amendment and 42 U.S.C. § 1983 or for equitable relief under the Texas Constitution. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001) ("Granting more relief than the movant is entitled to makes the order reversible, but not interlocutory."); *Hamilton v. Pechacek*, No. 02-12-00383-CV, 2014 WL 1096018, at *5 (Tex. App.—Fort Worth Mar. 20, 2014, no pet.) (mem. op.) (trial court erred in dismissing 42 U.S.C. § 1983 claim based on section 101.106(f) because section 101.106(f) did not apply to claim and because defendant did not move to dismiss plaintiff's § 1983 claim).

Thus, we hold that the trial court erred in dismissing Enriquez's claims against Dr. Morsy for violations of the Eighth Amendment and 42 U.S.C. § 1983 based on the "deliberate indifference to serious medical need" and for equitable relief under the Texas Constitution. *See Orihuela*, 2019 WL 687246, at *10–11, *11 n.15 (appellate court expressed no opinion on merits of Enriquez's 42 U.S.C. § 1983 and equitable relief claims, but concluded "that section 101.106(f), relied on by [UTMB doctor] as the basis for the dismissal of [Enriquez's] suit," could not support dismissal of such claims); *see also Hamilton*, 2014 WL 1096018, at *5.

We sustain Enriquez's first issue in part.

43

## Conclusion

We affirm in part and reverse in part the trial court's order.  We affirm the portion of the trial court's order dismissing Enriquez's tort claims against Dr. Morsy, reverse the portion of the trial court's order dismissing Enriquez's claims against Dr. Morsy for violations of the Eighth Amendment and 42 U.S.C. § 1983 based on the "deliberate indifference to serious medical need" and for equitable relief under the Texas Constitution, and remand the case to the trial court for further proceedings consistent with this opinion.  We dismiss any pending motions as moot.


Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Lloyd and Countiss.